1

James A. Morris, Esq. (CSBN 296852)
2   jmorris@jamlawyers.com
Shane E. Greenberg, Esq. (CSBN 210932)
3   sgreenberg@jamlawyers.com
4   **MORRIS LAW FIRM**
4111 W. Alameda Avenue, Suite 611
5   Burbank, CA 91505
Tel: (747) 283-1144
6   Fax: (747) 283-1143

Adam M. Goffstein
**GOFFSTEIN LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax: (314) 455-7278
*adam@goffsteinlaw.com*
(*Pro Hac Vice Pending*)

7   Daniel J. Orlowsky
8   **ORLOWSKY LAW, LLC**
7777 Bonhomme, Suite 1910
9   St. Louis, Missouri 63105
Phone: (314) 725-5151
10  Fax:    (314) 4557375
*dan@orlowskylaw.com*
11  (*Pro Hac Vice Pending*)

12  Attorneys for Plaintiff

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15  KALEE PRZYBYLAK and ANIL KUMAR
16  URMIL, on behalf of themselves and all others    **CLASS ACTION COMPLAINT**
similarly situated,

17          Plaintiffs,                              **JURY TRIAL DEMANDED**

18      v.

19  BISSELL BETTER LIFE, LLC.

20          Defendant.

21

22

23

24

25

26

27

28

**COMPLAINT AND JURY TRIAL DEMAND**

## CLASS ACTION COMPLAINT

Plaintiffs Kalee Przybylak and Anil Kumar Urmil ("Plaintiffs") brings this action on behalf of themselves and all others similarly situated against Bissell Better Life, LLC (otherwise referred to as "Defendant" or "Better Life"). Plaintiffs make the following allegations based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## INTRODUCTION

1. This is a class action lawsuit against Defendant Bissell Better Life, LLC for selling its household and personal care products as accomplishing their purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents," when, in fact, they contain unnatural and/or synthetic ingredients.

2. Founded in 2008, Better Life manufactures household cleaning and personal care products. Better Life offers cleaners, liquid and dish soaps, lotions, dishwasher gels, laundry detergents, all-purpose wipes, stain and odor eliminators, all-purpose cleaners, and screen cleaners.

3. Among other purportedly "natural" and "plant-derived" products, Defendant develops, manufactures, markets, and sells a variety of household and personal care products, including:

- Naturally Bathroom-Brightening Tub and Tile Cleaner, Tea Tree & Eucalyptus
- Naturally Crumb-Crushing Dishwasher Gel
- Naturally Dirt-Demolishing Laundry Detergent, Lavender Grapefruit
- Naturally Dirt-Demolishing Laundry Detergent, Unscented
- Naturally Dirt-Destroying Floor Cleaner, Citrus Mint
- Naturally Dust-Defying Wood Polish, Cinnamon and Lavender
- Naturally Filth-Fighting All-Purpose Cleaner, Clary Sage & Citrus

- Naturally Filth-Fighting All-Purpose Cleaner, Pomegranate
- Naturally Filth-Fighting All-Purpose Cleaner, Unscented
- Naturally Filth-Fighting All-Purpose Cleaning Wipes, Clary Sage & Citrus
- Naturally Grease-Kicking Dish Soap, Lemon Mint
- Naturally Grease-Kicking Dish Soap, Pomegranate
- Naturally Grease-Kicking Dish Soap, Unscented
- Naturally Grime-Busting Kitchen and Bath Scrubber, Unscented
- Naturally Mess-Conquering Nursery Cleaner, Lavender & Chamomile
- Naturally Nourishing Hand and Body Lotion, Citrus Mint
- Naturally Nourishing Hand and Body Lotion, Citrus Spice
- Naturally Nourishing Hand and Body Lotion, Clary Sage & Citrus
- Naturally Nourishing Hand and Body Lotion, Scent Free
- Naturally Power-Polishing Stainless Steel Polish, Lavender & Chamomile
- Naturally Skin-Soothing Hand and Body Soap, Citrus Mint
- Naturally Skin-Soothing Hand and Body Soap, Citrus Spice
- Naturally Skin-Soothing Hand and Body Soap, Clary Sage & Citrus
- Naturally Skin-Soothing Hand and Body Soap, Scent Free
- Naturally Smudge-Smacking Glass Cleaner, Unscented
- Naturally Stain-Slapping Stain and Odor Eliminator, Eucalyptus & Lemongrass
- Naturally Stunning Granite and Stone Cleaner, Pomegranate & Grapefruit
- Naturally Throne-Tidying Toilet Bowl Cleaner, Tea Tree & Peppermint

(hereinafter the "Products").

4.      This action seeks to remedy the unlawful, unfair, deceptive, and misleading business practices of Defendant with respect to the marketing and sale of its household and cleaning products, which are sold throughout the State of California and throughout the country.

5.      Defendant's marketing materials are replete with statements that the Products are natural, plant-derived, non-toxic, and contain no harmful ingredients, and the labels of all of the Products state the products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."

6.      Better Life's website contains numerous claims that the Products are "natural," "plant-derived," and "non-toxic."

7.      Defendant falsely, misleadingly, and deceptively labels the Products as accomplishing their purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."  The Products do not accomplish their purpose "NATURALLY" and are not "natural" because they contain unnatural and/or synthetic ingredients, such as PEG-150 stearate, phenoxyethanol, ethylhexyglycerin, methylisothiazolinone and caprylyl/capryl glucoside.  The products are not made with only "plant-derived cleaning agents" because they contain unnatural and/or synthetic cleaning agents, such as caprylyl/capryl glucoside, decyl glucoside, sodium carbonate, and sodium citrate.

8.      ***Phenoxyethanol*** is one of the ingredients used in numerous Better Life Products. Phenoxyethanol is toxic by definition under federal law, based on animal testing demonstrating that the substance is lethal even in very small doses.  Even short exposure could cause serious temporary or residual injury.  It is toxic to the kidneys, the nervous system, and the liver.  It is extremely hazardous in case of eye contact and very hazardous in case of skin contact (defatting the skin and adversely affecting the central nervous system and peripheral nervous system, causing headaches, tremors, and central nervous system depression).  It is also very hazardous in case of ingestion or inhalation.  It degrades into substances that are even more toxic.  It is a Category 2 germ cell mutagen, meaning that it is suspected of mutating human cells in a way that can be transmitted to children conceived after exposure.  Phenoxyethanol is an ethylene glycol ether, which is known to cause wasting of the testicles, reproductive changes, infertility, and changes to

kidney function. Phenoxyethanol is also Category 2 carcinogen, meaning that it is suspected to induce cancer or increase its incidence.

9.     Case studies indicate that repeated exposure to phenoxyethanol results in acute neurotoxic effects, as well as chronic solvent-induced brain syndrome, constant irritability, impaired memory, depression, alcohol intolerance, episodes of tachycardia and dyspnea, and problems with balance and rash.

10.     Plaintiffs purchased the Products in reliance on Defendant's representations that these Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." They would not have purchased the Products had they known that they contained unnatural and/or synthetic ingredients.

11.     Plaintiffs and the Class reasonably believed Defendants' false and misleading representations. Defendants knew or reasonably should have known that its representations regarding the Products were false, deceptive, misleading, and unlawful under California law.

12.     Plaintiffs and the Class Members paid a premium for the Products over comparable products that did not purport to accomplish their purpose "NATURALLY," be "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." Given that Plaintiff and Class Members paid a premium for the Products based on Defendants' representations that they accomplish their purpose "NATURALLY," are "natural," and/or made with "plant-derived cleaning agents." Plaintiffs and Class Members suffered an injury in the amount of the purchase price and/or the premium paid.

13.     Plaintiffs bring claims against Defendant individually and on behalf the Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period") for (1) violation of California's Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*; (2) violation of California's False Advertising Law ("FAL"), Business & Professions Code § 17500 *et seq.*; (3) violation of California's Unfair Competition Law ("UCL"),

California Business & Professions Code §§ 17200, *et seq.*; (4) violations of the Magnuson-Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (5) breach of express warranty; (6) breach of implied warranty of merchantability; (7) unjust enrichment; (8) negligent misrepresentation; and (9) fraud.

## PARTIES

14.     Plaintiff Kalee Przybylak is a California citizen who resides in Valley Village, California.  During the class period alleged herein, Plaintiff Przybylak purchased several Better Life Products on numerous occasions from a Bed Bath & Beyond store in Los Angeles County. Plaintiff Przybylak was specifically interested in purchasing natural household and personal care products.  Plaintiff Przybylak's purchases include, without limitation, Naturally Grease-Kicking Dish Soap and Naturally Skin-Soothing Hand and Body Soap, Clary Sage and Citrus.

15.     Plaintiff Przybylak purchased the Better Life Products because she saw the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."  Plaintiff Przybylak relied on Defendant's false, misleading, and deceptive representations that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "plant-derived cleaning agents."  She understood this to mean that she was purchasing natural products that did not contain any unnatural and/or synthetic ingredients.  Plaintiff Przybylak would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for the Better Life Products, if she had known that they contained unnatural and/or synthetic ingredients.  Plaintiff Przybylak would purchase the products in the future if Defendant changed the composition of the Products so that they conformed to their accomplishing their purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" labeling, or if the labels were corrected and she could trust that they were correct.

16.     Plaintiff Anil Kumar Urmil is a California citizen who resides in Alhambra, California. During the class period alleged herein, Plaintiff Urmil purchased several Better Life Products on numerous occasions from a Bed Bath & Beyond store in Los Angeles County. Plaintiff Urmil was specifically interested in purchasing natural household and personal care products. Plaintiff Urmil's purchases include, without limitation, Naturally Skin-Soothing Hand and Body Soap, Clary Sage & Citrus and Naturally Nourishing Hand and Body Lotion, Clary Sage & Citrus.

17.     Plaintiff Urmil purchased the Better Life Products because he saw the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." Plaintiff Urmil relied on Defendant's false, misleading, and deceptive representations that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "plant-derived cleaning agents." He understood this to mean that he was purchasing natural products that did not contain any unnatural and/or synthetic ingredients. Plaintiff Urmil would not have purchased the Products at all, or would have been willing to pay a substantially reduced price for the Better Life Products, if he had known that they contained unnatural and/or synthetic ingredients. Plaintiff Urmil would purchase the products in the future if Defendant changed the composition of the Products so that they conformed to their accomplishing their purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" labeling, or if the labels were corrected and she could trust that they were correct.

18.     Defendant, Bissell Better Life, LLC is a corporation with its principal place of business located at 2345 Walker Ave. NW, Grand Rapids, Michigan 49544. Bissell Better Life, LLC manufactures and/or causes the manufacture of household and personal care products. Bissell Better Life, LLC manufactures, markets, distributes, and sells the Better Life Products

throughout the United States at retail stores and through online websites, as well as direct to consumers through channels such as e-commerce.

## JURISDICTION AND VENUE

19.     This Court has personal jurisdiction over the parties in this case.  Plaintiffs Przybylak and Urmil are citizens of California.

20.     This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1331 (federal question).

21.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

22.     This Court has personal jurisdiction over Defendant because Defendant is a corporation with sufficient minimum contacts in California or otherwise intentionally avails itself of the laws of this State through its marketing of the products at issue in California to consumers in California, and through its direct sales of the products at issue in California to consumers in California, so as to render the exercise of jurisdiction by this Court consistent with traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. 1391.  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false, misleading and deceptive information regarding the nature, quality, and/or ingredients of the products, occurred within this District.

## COMMON FACTUAL ALLEGATIONS

24.     Consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in food, cleaning products, bath and beauty products, and everyday

household products. Defendant has capitalized on consumers' desire for purportedly natural and "plant-derived" products. Indeed, consumers are willing to pay, and have paid, a premium for products branded "natural" and "plant-derived" over products that contain synthetic ingredients. Reasonable consumers, including Plaintiffs and Class Members, value natural products for important reasons, including the belief that they are safer and healthier than alternative products that are not represented as natural.

25.     The Federal Trade Commission ("FTC") has warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers. If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.[1]

26.     Likewise, the Food and Drug Administration ("FDA") warns that any "natural" labeling on cosmetic products must be "truthful and not misleading."[2]

27.     The Products are manufactured and marketed by Defendant and sold in stores nationwide and through online websites, as well as direct to consumers through channels such as e-commerce.

28.     Defendant's marketing materials are replete with statements that the Products are natural, plant-derived, and non-toxic and the labels of all of the Products state that the products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."

29.     Defendant makes numerous statements in advertisements and on social media that the Products are "natural," "Natural Cleaners," and "Powerful Clean, Naturally."

---

[1] 75 Fed. Reg. 63552, 63586 (Oct. 15, 2010).
[2] FDA, Small Business & Homemade Cosmetics: Fact Sheet, *available at* https://www.fda.gov/Cosmetics/ResourcesForYou/Industry/ucm388736.htm#7.

30.     Defendant cultivates the Better Life image as a natural, non-synthetic, health and eco-friendly brand through its statements.  Better Life claims on its website that it manufactures "NATURAL CLEANING PRODUCTS FOR TODAY'S HOMEOWER."[3]

31.     Better Life's website makes numerous claims that its Products are "NATURAL CLEANERS," "CLEANER BY NATURE," "PLANT-DERIVED INGREDIENTS AND SCENTS," and "NON-TOXIC."[4]

32.     Better Life's website contains statements regarding its "natural" products including the following: "A non-toxic friendship;" "All of Better Life's cleaning agents come from plants;" "Our products are cruelty-free, natural, non-toxic…;"[5] and "Our natural, plant-derived products are free of dyes, synthetic fragrances, sulfates, and petroleum solvents."[6]

33.     The packaging for the Products misrepresents that the Products accomplish their purpose "NATURALLY."  Better Life makes this claim on the packaging of all the Products:

---

[3] https://www.cleanhappens.com/
[4] https://www.cleanhappens.com/
[5] https://www.cleanhappens.com/pages/about
[6] https://www.cleanhappens.com/pages/faq

34.     The packaging for the Products also misrepresents that the Products are "natural" and contain "100% plant-derived cleaning agents."

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23



24      35.     The labeling for the Products claims that they "accomplish their purpose

25  "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or

26  "plant-derived cleaning agents."  However, each of these representations is false and misleading.

27
28  Consumers understand the terms "naturally" and "natural" to mean, "existing in nature and not

made or caused by people; coming from nature" or "not having any extra substances or chemicals added; not containing anything artificial." Under this definition, and the expectations of reasonable consumers, the Products cannot be considered "naturally" or "natural" because they contain unnatural and/or synthetic ingredients.

36.     Further, Better Life's representations on the Products that they are made with "100% plant-derived cleaning agents" are also false and misleading. Consumers reasonably believe that a product labeled "100% plant-derived cleaning agents" does not contain synthetic ingredients. Consumers reasonably expect that a plant-derived product contains only plant-derived ingredients and water. Consumers reasonably expect that these plant-derived ingredients may have been created *using* a synthetic processing aid, *i.e.*, a synthetic compound that helps process the plant ingredient but does not remain in the finished ingredient, *e.g.*, a synthetic agent that removes water or other substances from the plant ingredient. Consumers, however, reasonably expect that the synthetic ingredient was not reacted with the plant-derived ingredient in such a way that the synthetic ingredient, in whole or in part, remains in the finished ingredient.

37.     Consumers understand the terms "plant" and "derived" to mean, "existing in nature and not made or caused by people; coming from nature" or "not having any extra substances or chemicals added; not containing anything artificial." Under this definition, and the expectations of reasonable consumers, the Products cannot be considered "100% plant-derived cleaning agents" because they contain unnatural and/or synthetic cleaning agents.

38.     Trade associations also define natural and plant-derived products as not containing synthetic ingredients.

39.     Representing that a product is accomplishing its purpose "NATURALLY," is "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" is a statement of fact.

40.     Consumers reasonably believe that a product labeled accomplishing its purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents," does not contain unnatural and/or synthetic ingredients.

41.     Defendant's representations that its Better Life Products contain only natural ingredients are false, misleading, and deceptive because the Better Life Products contain multiple ingredients that are unnatural and/or synthetic.

42.     Defendant's Better Life Products contain the following non-exhaustive list of unnatural, synthetic, and/or chemical ingredients:

a.  **Acrylates copolymer** is a chemical substance that is a copolymer of acrylamide and ammoniumacrylate monomers.

b.  **Caprylyl/capryl glucoside** a "surfactant (cleanser)," this one is formed in the lab by blending a mixture of alcohols with some simple sugars.[7]  Alcohols are a synthetic substance according to federal regulations.  See 7. C.F.R. 205.603(a)(1).

c.  **Capric/caprylic triglyceride** is an artificial compound manufactured by hydrolyzing coconut oil, removing the free glycerin, and separating the medium chain length fatty acids by fractional distillation. The acids are then blended in the proper ratio and re-esterified with glycerin.  Glycerin is a synthetic substance according to federal regulations.  See 7. C.F.R. 205.605(b).

d.  **Cetearyl alcohol** is a mixture of cetyl and stearyl alcohols. Cetyl alcohol is classified as synthetic by federal regulations. It is chemically synthesized by, for example: catalytic hydrogenation of the triglycerides obtained from coconut oil or tallow, oxidation of a chain growth product of ethylene oligomerized on a triethylaluminum catalyst, reaction of

---

[7] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

palmitoyl chloride and sodium borohydride, reaction of methylthiopalmitate plus Raney nickel.  Stearyl alcohol is also produced synthetically.

e. **Cetyl alcohol** is classified as synthetic by federal regulations. It is chemically synthesized by, for example: catalytic hydrogenation of the triglycerides obtained from coconut oil or tallow, oxidation of a chain growth product of ethylene oligomerized on a triethylaluminum catalyst, reaction of palmitoyl chloride and sodium borohydride, reaction of methylthiopalmitate plus Raney nickel.

f. **Citric Acid** is a synthetic substance (2-hydroxy-propane-1, 2,3-tricarboxylic acide).  While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutain strans of black mold fungus, *Aspergillus* niger.  This is synthetically produced by feeding simple carbohydrates to Aspergillus niger mold and then processing the resulting fermented compound.  Calcium hydroxide and sulfuric acid are often used in processing citric acid.  A technical evaluation report for the substance citric acid complied by the United States Department of Agriculture, Agricultural Marketing Service ("USDA AMS") for the National Organic Program classified citric acid as "Synthetic Allowed".  See page 4, available at http://www.ams.usda.gov/AMSv1.0/getfile?dDocName=STELPRDC5067876.  As one of the USDA AMS reviewers commented,

> "[Citric acid] is a natural[ly] occurring substance that commercially goes through numerous chemical processes to get to [its] final usable form. This processing would suggest that it be classified as synthetic." *Id.* at 3.

The report further explains, under the "How Made" question, that citric acid is made –

> "Traditionally by extraction from citrus juice, no longer commercially available. It is now extracted by fermentation of a carbohydrate substrate (often molasses) by citric acid bacteria, *Aspergillus niger* (a mold) or *Candida guilliermondii* (a yeast). Citric acid is recovered from the fermentation broth by a lime and sulfuric acid process in which the citric acid is first precipitated as

a calcium salt and then reacidulated with sulfuric acid." *Id.* at 4.

g. **Coco betaine** is artificially produced by reacting fatty dimethyl amines from coconuts with chloroacetic acid.  It is classified as synthetic by trade associations governing the use of the term "natural" on household and personal care products.

h. **Coco glucoside** is chemically produced through coconut alcohol and glucose.  Coconut alcohol is a mixture of the fatty alcohols from the fatty acids derived from coconut oil. [8] Alcohols and glucose are synthetic substances according to federal regulations.  *See* 7. C.F.R. 205.603(a)(1) and (a)(11).

i. **Cocopolyglucose citrate** is a synthetic surfactant.

j. **Cocopolyglucoside** is a surfactant produced by chemical reaction between glucose and oil-derived ingredients.

k. **Decyl glucoside** is a synthetic ingredient obtained by the condensation of decyl alcohol and glucose.[9]  Alcohols and glucose are synthetic substances according to federal regulations.  7. C.F.R. 205.603(a)(1) and (a)(11).  Or can be produced by reacting glucose and n-butanol in the presence of a strong acid catalyst such as p-toluenesulfonic acid or sulfuric acid, followed by the transglycosidation of the resulting butyl glucoside with fatty alcohol to yield decyl glucoside. Alternatively, it can be produced by reacting highly refined glucose with fatty acids in the presence of an acid catalyst.

l. **Dimethicone** is what chemists call a "silicon-based polymer" – "polymer" meaning it is a large molecule made up of several smaller units bonded together.  Simply put, dimethicone is a silicon oil that is man-made in the laboratory.

---

[8] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

[9] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

m. **Disodium cocoglucoside citrate** is a disodium salt of the ester of citric acid and cocoglucoside – both synthetic substances.

n. **Disodium cocoyl glutamate** is a synthetic ingredient. To make this ingredient, you begin with raw natural coconut oil. Next comes the extraction process where the oil is separated out for use with petrochemicals and other chemical solvents. The extraction is followed by extensive processing and forced reactions with synthetic chemicals (usually several reactions with several chemicals), which transforms the ingredient until a foam boosting chemical surfactant is produced. This ingredient is being marketed as "from coconut" or "naturally derived" when it is no longer equivalent to coconut oil, but in actuality is a synthetic creation. Disodium cocoyl glutamate (from coconut oil) does not grow on coconut trees.

o. **Ethylhexylglycerin** is a synthetic skin-conditioning agent produced by the catalytic splitting of ethylhexylglycidyl ether (also an artificial compound). It is prohibited by industry associations from being included in products labeled as "natural."

p. **Glycerin** is an emollient that, according to federal regulations, is a synthetic substance. *See* 7. C.F.R. 205.603(a)(12). The glycerin used in Defendant's products is not "natural" but instead, upon information and belief, is manufactured through saponification, whereby fact molecules in vegetable oil are chemically altered using sodium hydroxide, a highly toxic chemical.

A factory-produced texturizer that is created by complex processing. It is recognized by federal regulations as synthetic. *See* 7 C.F.R. § 205.605(b). It is commonly used as a filler and thickening agent. It requires multiple processing steps in an industrial environment to create Glycerin. Therefore, it cannot be described as "natural." A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and

oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| Table 2 Processes for producing glycerin by hydrolysis of fats and oils[12] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |

17

| Continuous High Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counter flow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

q. **Glyceryl stearate** is chemically synthesized by glycerolysis or by esterification of glycerol and stearic acid. There is no chemical difference between glycerol and glycerin. Both are names for the same chemical. Glycerin is a synthetic substance according to federal regulations. *See* 7. C.F.R. 205.605(b).

r. **Lactic acid** is produced commercially by fermentation of carbohydrates such as glucose, sucrose, or lactose, or by chemical synthesis. Glucose is a synthetic substance according to federal regulations. *See* 7. C.F.R. 205.603(a)(11).

s. **Lauroyl lactylate** is a synthetic emollient made up of lauryl alcohol and lactic acid. Historically, lauryl alcohol was prepared solely from natural products, but is now synthesized from ethylene. [10] Lactic acid is produced commercially by fermentation of carbohydrates such as glucose, sucrose, or lactose, or by chemical synthesis. Glucose is a synthetic substance according to federal regulations. *See* 7. C.F.R. 205.603(a)(11).

t. **Lauryl glucoside.** A surfactant derived from genetically modified corn. It is produced by alcoholysis of glucose and lauryl alcohol under acidic conditions. Glucose and alcohol are

---

[10] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

synthetic substances according to federal regulations. *See* 7. C.F.R. 205.603(a)(1) and (a)(11). Historically, lauryl alcohol was prepared solely from natural products, but is now synthesized from ethylene. [11]

u. **Methylisothiazolinone** is a synthetic cosmetic preservative. It is a powerful biocide that has been linked to brain and nerve cell damage. This synthetic biocide preservative is produced by the controlled chlorination of dimethyl-dithiodipropionamide in solvent and then neutralized.

v. **PEG-150 stearate** is a synthetic cleansing agent that is a polyethylene glycol ester of stearic acid.

w. **Phenoxyethanol.** A synthetic substance and adjuvant. *See* 21 C.F.R. § 172.515.[12] It is produced by reacting phenol with ethylene oxide in the presence of a basic catalyst under pressure and heat. It is classified as synthetic by trade associations governing the use of the term "natural" on household and personal care products.

x. **Potassium sorbate** is produced by reacting sorbic acid and potassium hydroxide. It is classified as a chemical preservative under federal regulations.

y. **Sodium carbonate** is a toxic household chemical substance.

z. **Sodium citrate** is the sodium salt of citric acid synthesized by reacting sodium carbonate with citric acid. It is a recognized synthetic chemical under federal regulations. *See* 7 C.F.R. §205.605(b). It is usually prepared by reacting sodium carbonate or sodium hydroxide with citric acid, or by reacting sodium sulfate with calcium citrate.

---

[11] http://www.newdirections.com.au/articles/images/Decyl-Glucoside-and-Other-Alkyl-Glucosides-as-Used-in-Cosmetics.pdf

[12] The Federal Trade Commission, recognizing that many of these same ingredients are unquestionably synthetic, has filed complaints against companies that have used these ingredients promoted as natural.

aa. **Sodium gluconate** is the sodium salt of gluconic acid, produced by fermentation of glucose. Glucose is a synthetic substance according to federal regulations. *See* 7. C.F.R. 205.603(a)(11).

bb. **Sodium silicate** is a generic name for a mixture of chemical compounds.

cc. **Sodium stearoyl lactylate** is a synthetic substance. It is made by combining lactic acid and stearic acid, and then reacting the result with sodium hydroxide or calcium hydroxide to make the sodium or calcium salt.

dd. **Sorbitan laurate** is a synthetic mixture of esters formed from the fatty acid lauric acid and polyols derived from sorbitol, including sorbitan and isosorbide.

ee. **Tea-stearate** is the triethanolamine salt of stearic acid used as a surfactant-cleansing agent and a surfactant-emulsifying agent in a wide variety of cosmetic formulations.

ff. **Tocopherol** are classified as synthetic substances by federal regulations, even when extracted from natural oils, done through molecular distillation, solvent extraction, or absorption chromatography. *See* 7. C.F.R. 205.605(b).

gg. **Tocopheryl acetate** is a chemical compound that consists of acetic acid and tocopherol.

hh. **Xanthan gum** is a thickening agent that, according to federal regulations, is a synthetic substance. *See* 7 C.F.R. 205.605(b). Xanthan gum is not "natural" but is instead manufactured through fermentation.

43. No product labeled accomplishing its purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents," should contain any of these ingredients. And yet, the Better Life Products contain the following, non-exhaustive, list of unnatural and/or synthetic ingredients:

| **Product** | **Synthetic Ingredients** |
| --- | --- |
| | |

| | |
|---|---|
| Naturally Bathroom-Brightening Tub and Tile Cleaner, Tea Tree & Eucalyptus | Decyl glucoside<br>Cocopolyglucoside<br>Citric acid<br>Lactic acid<br>Sodium gluconate<br>Sodium citrate<br>Potassium sorbate<br>Coco betaine |
| Naturally Crumb-Crushing Dishwasher Gel | Sodium Citrate<br>Coco glucoside<br>Sodium silicate<br>Decyl glucoside<br>Glycerin<br>Sodium carbonate<br>Xantham gum<br>Citric acid |
| Naturally Dirt-Demolishing Laundry Detergent, Lavendar Grapefruit | Decyl glucoside<br>Lauryl glucoside<br>Sodium citrate<br>Glycerin<br>Sodium carbonate<br>Citric acid |
| Naturally Dirt-Demolishing Laundry Detergent, Unscented | Decyl glucoside<br>Lauryl glucoside<br>Sodium citrate<br>Glycerin<br>Sodium carbonate<br>Citric acid |
| Naturally Dirt-Destroying Floor Cleaner, Citrus Mint | Lauryl glucoside<br>Decyl glucoside<br>Glycerin<br>Methylisothiazolinone |
| Naturally Dust-Defying Wood Polish, Cinnamon and Lavender | Glycerin<br>Sorbitan laurate<br>Decyl glucoside<br>Acrylates copolymer<br>Methylisothiazolinone |
| Naturally Filth-Fighting All-Purpose Cleaner, Clary Sage & Citrus | Decyl glucoside<br>Lauryl glucoside<br>Disodium cocoyl glutamate<br>Methylisothiazolinone |
| Naturally Filth-Fighting All-Purpose Cleaner, Pomegranate | Decyl glucoside<br>Lauryl glucoside<br>Disodium cocoyl glutamate<br>Methylisothiazolinone |
| Naturally Filth-Fighting All-Purpose Cleaner, Unscented | Decyl glucoside<br>Lauryl glucoside<br>Disodium cocoyl glutamate<br>Methylisothiazolinone |

| | |
|---|---|
| Naturally Filth-Fighting All-Purpose Cleaning Wipes, Clary Sage & Citrus | Decyl glucoside<br>Lauryl glucoside<br>Disodium cocoyl glutamate<br>Methylisothiazolinone |
| Naturally Grease-Kicking Dish Soap, Lemon Mint | Lauryl glucoside<br>Caprylyl.capryl glucoside<br>Decyl glucoside<br>Glycerin<br>Disodium cocoglucsoide citrate<br>Tocpherol |
| Naturally Grease-Kicking Dish Soap, Pomegranate | Lauryl glucoside<br>Caprylyl.capryl glucoside<br>Decyl glucoside<br>Glycerin<br>Disodium cocoglucsoide citrate<br>Tocpherol |
| Naturally Grease-Kicking Dish Soap, Unscented | Lauryl glucoside<br>Caprylyl.capryl glucoside<br>Decyl glucoside<br>Glycerin<br>Disodium cocoglucsoide citrate<br>Tocpherol |
| Naturally Grime-Busting Kitchen and Bath Scrubber, Unscented | Calcium carbonate<br>Decyl glucoside<br>Cetyl alcohol<br>Cetearyl alcohol<br>Xantham gum<br>Methylisothiazolinone |
| Naturally Mess-Conquering Nursery Cleaner, Lavender & Chamomile | Lauryl glucoside<br>Decyl glucoside<br>Disodium cocoyl glutamate<br>Methylisothiazolinone |
| Naturally Nourishing Hand and Body Lotion, Citrus Mint | Glycerin<br>Carpic/caprylic triglycerides<br>Tea-stearate<br>Tocopherol acetate<br>Sodium stearoyl lactylate<br>Cetearyl alcohol<br>Ethylhexylglycerin<br>Phenoxyethanol<br>Glyceryl stearate |
| Naturally Nourishing Hand and Body Lotion, Citrus Spice | Glycerin<br>Carpic/caprylic triglycerides<br>Tea-stearate<br>Tocopherol acetate<br>Sodium stearoyl lactylate<br>Cetearyl alcohol<br>Phenoxyethanol<br>Ethylhexylglycerin<br>Glyceryl stearate |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Naturally Nourishing Hand and Body Lotion, Clary Sage | Glycerin<br>Carpic/caprylic triglycerides<br>Tea-stearate<br>Tocopherol acetate<br>Sodium stearoyl lactylate<br>Cetearyl alcohol<br>Phenoxyethanol<br>Ethylhexylglycerin<br>Glyceryl stearate |
| Naturally Nourishing Hand and Body Lotion, Scent Free | Glycerin<br>Carpic/caprylic triglycerides<br>Tea-stearate<br>Tocopherol acetate<br>Cetearyl alcohol<br>Phenoxyethanol<br>Ethylhexylglycerin<br>Glyceryl stearate |
| Naturally Power-Polishing Stainless Steel Polish, Lavender & Chamomile | Sorbitan laurate<br>Glycerin<br>Decyl glucoside<br>Acrylates copolymer<br>Methylisothiazolinone |
| Naturally Skin-Soothing Hand and Body Soap, Citrus Mint | Decyl glucoside<br>Cocopolyglucose citrate<br>Lauroyl lactylate<br>Glycerin<br>Tocopherol acetate<br>PEG-150 stearate<br>Phenoxyethanol<br>Ethylhexylglycerin |
| Naturally Skin-Soothing Hand and Body Soap, Citrus Spice | Decyl glucoside<br>Cocopolyglucose citrate<br>Lauroyl lactylate<br>Glycerin<br>Tocopherol acetate<br>PEG-150 stearate<br>Phenoxyethanol<br>Ethylhexylglycerin |
| Naturally Skin-Soothing Hand and Body Soap, Clary Sage | Decyl glucoside<br>Cocopolyglucose citrate<br>Lauroyl lactylate<br>Glycerin<br>Tocopherol acetate<br>PEG-150 stearate<br>Phenoxyethanol<br>Ethylhexylglycerin |
| Naturally Skin-Soothing Hand and Body Soap, Scent Free | Decyl glucoside<br>Cocopolyglucose citrate<br>Lauroyl lactylate<br>Glycerin |

| | Tocopherol acetate |
| | PEG-150 stearate |
| | Phenoxyethanol |
| | Ethylhexylglycerin |
| Naturally Smudge-Smacking Glass Cleaner, Unscented | Decyl glucoside |
| | Lauryl glucoside |
| | Methylisothiazolinone |
| Naturally Stain-Slapping Stain and Odor Eliminator, Eucalyptus & Lemongrass | Disodium coco-glucoside citrate |
| | Sodium citrate |
| | Lauryl glucoside |
| | Methylisothiazolinone |
| Naturally Stunning Granite and Stone Cleaner, Pomegranate & Grapefruit | Lauryl glucoside |
| | Decyl glucoside |
| | Glycerin |
| | Dimethicone |
| | Acrylates copolymer |
| | Methylisothiazolinone |
| Naturally Throne-Tidying Toilet Bowl Cleaner, Tea Tree & Peppermint | Cocopolyglucoside |
| | Citric acid |
| | Lactic acid |
| | Sodium gluconate |
| | Sodium citrate |
| | Xantham gum |
| | Potassium sorbate |
| | Coco betaine |

44.  Given the significant presence of these unnatural and/or synthetic ingredients in the Products, Defendant's representations that they accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents," are deceptive and misleading.

45.  The term "synthetic" is also defined by federal statute as "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources, except that such term shall not apply to substances created by naturally occurring biological processes." 7 U.S.C. § 6502(21).

46.  Surveys and other market research, including expert testimony Plaintiff intends to introduce, will demonstrate that the terms "NATURALLY," "natural," "100% plant-derived cleaning agents," and "plant-derived cleaning agents," are misleading to a reasonable consumer

because the reasonable consumer believes that the terms "NATURALLY," "natural," "100% plant-derived cleaning agents," and "plant-derived cleaning agents," when used to describe a good such as the Products, means that it is free of synthetic ingredients.

47.     Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural or plant-derived, especially at the point of sale.  Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

48.     Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer.  That is why, even though all of the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

49.     Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendant's prominent claims, representations, and warranties that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."

50.     Defendant does not disclose that any of the ingredients listed above are unnatural and/or synthetic ingredients.  A reasonable consumer understands Defendant's accomplishing their purpose "NATURALLY," "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" to mean that the Products are "natural" and "plant-derived" and do not contain unnatural and/or synthetic ingredients.

51.     Defendant's representations that the Products accomplish their purpose "NATURALLY," are "natural" and "plant-derived," induced consumers, including Plaintiffs and Class Members, to pay a premium to purchase the Products.  Plaintiffs and Class Members relied on Defendant's false and misleading misrepresentations in purchasing the Products at some

premium price above comparable alternatives that are not represented to accomplish their purpose "NATURALLY," be "natural" and "plant-derived." If not for Defendant's misrepresentations, Plaintiffs and Class Members would not have been willing to purchase the Products at a premium price. Accordingly, they have suffered an injury as a result of Defendant's misrepresentations.

52.     Defendant knew that consumers will pay more for a product labeled accomplishing its purpose "NATURALLY," "natural" and "plant-derived," and intended to deceive Plaintiffs and putative class members by labeling the Better Life Products as purportedly natural products.

53.     Defendant has profited enormously from its false and misleading representations that Better Life Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." The purpose of this action is to require Better Life to undertake a corrective advertising campaign and to provide consumers with monetary relief for Better Life's deceptive and misleading product claims.

## CLASS REPRESENTATION ALLEGATIONS

54.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased the Better Life Products (the "Class"). Excluded from the Class are Defendant, its affiliates, employees, officers and directors, persons or entities that purchases the Products for resale, and the Judge(s) assigned to this case.

55.     Plaintiffs Przybylak and Urmil also seeks to represent a Subclass of all Class Member who purchased the Better Life Products in California during the class period (the "California Subclass"). Excluded from the California Subclass are Defendant, its affiliates, employees, officers and directors, persons or entities that purchases the Products for resale, and the Judge(s) assigned to this case.

56.     At this time, Plaintiffs do not know the exact number of members of the aforementioned Class and Subclass ("Class Members" and "Subclass Members," respectively); however, given the nature of the claims and the number of retail stores in the United States and

websites that sell the Products as well as sales through direct to consumer channels such as e-commerce, Plaintiffs believe that Class and Subclass members are so numerous that joinder of all members is impracticable.

57.     There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the putative classes that predominate over questions that may affect individual Class members include, but are not limited to the following:

    (a)     whether Defendant misrepresented and/or failed to disclose material facts concerning the Products;

    (b)     whether Defendant's conduct was unfair and/or deceptive;

    (c)     whether Defendant has been unjustly enriched as a result of the unlawful, fraudulent, and unfair conduct alleged in this Complaint such that it would be inequitable for Defendant to retain the benefits conferred upon them by Plaintiffs and the classes;

    (d)     whether Plaintiffs and the classes have sustained damages with respect to the common law claims asserted, and if so, the proper measure of their damages.

58.     With respect to the California Subclass, additional questions of law and fact common to the members that predominate over questions that may affect individual members include whether Defendant violated the California Consumer Legal Remedies Act, as well as California's False Advertising Law and Unfair Competition Law.

59.     Plaintiffs'' claims are typical of those of the Class and respective Subclasses because Plaintiffs, like all members of the Class and Subclasses purchased, in a typical consumer setting, Defendant's Products bearing the natural representations and other representations, and Plaintiffs sustained damages from Defendant's wrongful conduct.

60.     Plaintiffs will fairly and adequately protect the interests of the Class and Subclass and have retained counsel that is experienced in litigating complex class actions.  Plaintiffs have no interests which conflict with those of the classes.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

62.     The prerequisites to maintaining a class action for equitable relief are met as Defendant has acted or refused to act on grounds generally applicable to the Class and Subclass, thereby making appropriate equitable relief with respect to the classes as a whole.

63.     The prosecution of separate actions by members of the Class and Subclass would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant.  For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not.  Additionally, individual actions could be dispositive of the interest of the classes even where certain Class or Subclass members are not parties to such actions.

## COUNT I

### (Violation of California's Consumer Legal Remedies Act)

64.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

65.     Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass against Defendant.

66.     This cause of action is brought pursuant to California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750-1785 (the "CLRA").

67.     Plaintiffs and the other members of the California Subclass are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Better Life Products for personal, family, or household purposes.

68.     Plaintiffs, the other members of the California Subclass, and Defendant have engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

69.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purpose of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

70.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiffs and the other members of the California Subclass that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" when, in fact, they contain unnatural and/or synthetic ingredients.

71.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7) and (a)(9).

72.     CLRA § 1782 NOTICE.  On December 6, 2018, a CLRA demand letter was sent to Defendant via certified mail that provided notice of Defendant's violation of the CLRA and demanded that within thirty (30) days from that date, Defendant correct, repair, replace or other rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  The letter also stated that if Defendant refused to do so, a complaint seeking damages in accordance with the CLRA would be filed.  Defendant received the letter on December 14, 2019.  Defendant has failed to comply with this letter.  Accordingly, pursuant to California Civil Code § 1780(a)(3), Plaintiffs, on behalf of themselves and all other members of the California Subclass, seek injunctive relief, compensatory damages, punitive damages, and restitution of any ill-gotten gains due to Defendant's acts and practices.

## COUNT II

### (Violation of California's False Advertising Law)

73.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

74.     Plaintiffs bring this cause of action on behalf of themselves and members of the California Subclass.

75.     California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, … in an advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

76.     Defendant committed acts of false advertising, as defined by §§ 17500, *et seq.*, by falsely claiming that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" when they are not.

77.     Defendant knew or should have known through the exercise of reasonable care that their representations about the Products were untrue and misleading.

78.     Defendant's actions in violation of §§ 17500, *et seq.* were false and misleading such that the general public is and was likely to be deceived.  Plaintiffs and the California Subclass have suffered injury in fact and have lost money or property as a result of Defendant's FAL violations because:  (a) they would not have purchased the Products on the same terms if they knew that the products were made with unnatural and/or synthetic ingredients; (b) they paid a substantial price premium compared to other household products due to Defendant's

misrepresentations; and (c) the products do not have the characteristics, uses, or benefits as promised.

### COUNT III

### (Violation of California's Unfair Competition Law)

79.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

80.     Plaintiffs bring this cause of action on behalf of themselves and members of the proposed California Subclass.

81.     By committing the acts and practices alleged herein, Defendant has violated California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the California Subclass, by engaging in unlawful, fraudulent, and unfair conduct.

82.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of:

     (a)   its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and (a)(9), as alleged above; and

     (b)   its violations of the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.* as alleged above.

83.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in fraudulent conduct.

84.     As more fully described above, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive reasonable consumers. Indeed, Plaintiffs and the other members of the California Subclass were unquestionably deceived regarding the nature of the Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresents and/or omits the true facts concerning the characteristics of the Products. Said acts are fraudulent business practices.

85.     Defendant's acts and practices described above also violate the UCL's proscription against engaging in unfair conduct.

86.     Plaintiffs and the other California Subclass members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling or by virtue of paying a premium price for the unlawfully, fraudulently, and unfairly marketed, advertised, packaged, and labeled Better Life Products.

87.     There is no benefit to consumers or competition from deceptively marketing and labeling the Products, which purport to accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents," when these unqualified claims are false.

88.     Plaintiffs and the other California Subclass members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

89.     The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiffs and the other members of the California Subclass.

90.     Defendant's violations of the UCL continue to this day.

91.     Pursuant to California Business and Professional Code § 17203, Plaintiffs and the California Subclass seek an order of this Court that includes, but is not limited to, an order requiring Defendants to:

(a)     provide restitution to Plaintiffs and the other California Subclass members;

(b)     disgorge all revenues obtained as a result of violations of the UCL; and

(c)      pay Plaintiffs' and the California Subclass attorneys' fees and costs.

### COUNT IV

**(Violation of The Magnuson-Moss Warranty Act,
15 U.S.C. §§ 2301, et seq.)**

92.     Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

93.     Plaintiffs bring this cause of action on behalf of themselves and members of the proposed Class and California Subclass against Defendant.

94.     The Better Life Products are consumer products as defined in 15 U.S.C. § 2301(1).

95.     Plaintiffs and the Class and California Subclass members are consumers as defined in 15 U.S.C. § 2301(3).

96.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

97.     In connection with the sale of the Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301(6), by making express warranties that the accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."

98.     The Products do not conform to the express warranties because each of the express warranties is false and misleading.  The Products contain unnatural and/or synthetic ingredients.

99.     By reason of Defendant's breach of warranties, Defendant violated the statutory rights due Plaintiffs and the Class and California Subclass members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiffs and the Class and California Subclass members.

100.    Plaintiffs and the Class and California Subclass members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Products if they knew the truth about the unnatural and/or synthetic ingredients in the Products.

## COUNT V

### (Breach of Express Warranty)

101.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

102.    Plaintiffs bring this cause of action on behalf of themselves and members of the proposed Class and California Subclass against Defendant.

103.    Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, expressly warranted that the Products accomplished their purpose "NATURALLY," were "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."

104.    Defendant's express warranties, and its affirmations of fact and promises made to Plaintiffs and the Class regarding the Products, became part of the basis of the bargain between Defendant and Plaintiffs and the Class, thereby creating an express warranty that the Products would conform to those affirmations of act, representations, promises, and descriptions.

105.    The Products do not conform to the express warranty because they contain unnatural and/or synthetic ingredients.

106.    As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs and Class members have been injured and harmed because (a) they would not have purchased the Products on the same terms if they knew the truth about the Products unnatural and/or synthetic ingredients; (b) they paid a substantial premium based on Defendant's express warranties; and (c) the Products do not have the characteristics, uses, or benefits as promised.

## COUNT VI

### (Breach of Implied Warranty of Merchantability)

107.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

108.     Plaintiffs bring this cause of action on behalf of themselves and members of the proposed Class and California Subclass against Defendant.

109.     Defendant, as the designer, manufacturer, marketer, distributor, and/or seller, impliedly warranted that the Better Life Products accomplished their purpose "NATURALLY," were "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." Defendant breached the warranty implied in the contract for the sale of the Better Life Products because the goods were not "adequately contained, packaged, and labeled as the agreement may require," and the goods did not "conform to the promise or affirmations of fact made on the container or label." *See* U.C.C. § 2-314(2) (listing requirements for merchantability). As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendant to be merchantable.

110.     Plaintiffs and Class members purchased the Better Life Products in reliance upon Defendant's skill and judgment in properly packaging and labeling the Better Life Products.

111.     The Better Life Products were not altered by Plaintiffs or Class members.

112.     The Better Life Products were defective when they left the exclusive control of Defendant.

113.     Defendant knew that the Better Life Products would be purchased and used without additional testing by Plaintiffs and Class members.

114.     Better Life Products were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

115.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because they would not have purchased the Better Life Products if they knew the truth about the products, namely, that they contain unnatural and/or synthetic ingredients.

## COUNT VII

### (Unjust Enrichment)

116.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

117.    Plaintiffs brings this cause of action on behalf of themselves and members of the proposed Class and California Subclass against Defendant.

118.    Plaintiffs and Class members conferred benefits on Defendant by purchasing the Better Life Products.

119.    Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the Better Life Products.  Retention of those moneys under these circumstances is unjust and inequitable because Defendant misrepresented that the Better Life Products accomplished their purpose "NATURALLY," were "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."  These misrepresentations caused injuries to Plaintiffs and Class members because they would not have purchased the Better Life Products if the true facts were known.

120.    Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for its unjust enrichment, as ordered by the Court.

## COUNT VIII

### (Negligent Misrepresentation)

121.    Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

122.    Plaintiffs bring this cause of action on behalf of themselves and members of the proposed Class and California Subclass against Defendant.

123. As discussed above, Defendant misrepresented that the Better Life Products accomplished their purpose "NATURALLY," were "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."

124. At the time Defendant made these representations, Defendant knew or should have known that these representations were false or made them without knowledge of their truth or veracity.

125. At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Better Life Products.

126. The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Better Life Products.

127. Plaintiffs and Class members would not have purchased the Better Life Products if the true facts had been known.

128. The negligent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT IX

### (Fraud)

129. Plaintiffs incorporate by reference and re-allege herein all paragraphs alleged above.

130. Plaintiffs bring this cause of action on behalf of themselves and members of the proposed Class and California Subclass against Defendant.

131. As discussed above, Defendant provided Plaintiffs and Class members with false or misleading material information about the Products and failed to disclose material facts about the Products, including but not limited to the fact that the Products contain unnatural and/or synthetic ingredients.

132.    The misrepresentations and omissions made by Defendant, upon which Plaintiffs and Class members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class members to purchase the Products.

133.    The fraudulent actions of Defendant caused damage to Plaintiffs and Class members, who are entitled to damages and other legal and equitable relief as a result.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a.    For an order certifying the nationwide Class and the California Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as Class and California Subclass representatives; and naming Plaintiffs' attorneys as Class Counsel to represent the Class and California Subclass members;

b.    For an order declaring the Defendant's conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs, the nationwide Class, and the California Subclass on all counts asserted herein;

d.    For an order awarding compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For an order requiring Defendant to undertake a corrective advertising campaign;

h.    For injunctive relief as pleaded or as the Court may deem proper; and

i.    For an order awarding Plaintiffs and the Class and California Subclass their reasonable attorneys' fees and expenses and costs of suit.

## JURY DEMAND

1    Plaintiffs demand a trial by jury of all issues so triable.

2

3    Dated: March 19, 2019                    Respectfully submitted,

4

5                                             _____
                                             James A. Morris, Esq. (CSBN 296852)
6                                             Shane A. Greenberg, Esq. (CSBN 210932)
                                             **MORRIS LAW FIRM**
7                                             4111 W. Alameda Avenue, Suite 611
                                             Burbank, CA 91505
8                                             Tel:  (747) 283-1144
                                             Fax:  (747) 283-1143
9                                             *jmorris@jamlawyers.com*
                                             *sgreenberg@jamlawyers.com*
10
                                             *Attorneys for Plaintiff*
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

**I, James A. Morris, declare as follows:**

1.      I am counsel for Plaintiffs, and I am the owner of Morris Law Firm.  I make this declaration to the best of my knowledge, information, and belief of the facts stated herein.

2.      The complaint filed in this action is filed in the proper place for trial because the Defendant has done and is doing business in the County of Los Angeles.  Such business includes the marketing, distributing, and sale of Better Life Products at various retail stores.

3.      Plaintiff Przybylak purchased her Better Life Products from a store in Los Angeles County.

4.      Plaintiff Urmil purchased his Better Life Products from a store in Los Angeles County.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on March 19, 2019, at Burbank, California.

James A. Morris, Jr.