Daniel J. Orlowsky
**ORLOWSKY LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax;    (314) 455-7375
*dan@orlowskylaw.com*
*(Pro Hac Vice)*

Adam M. Goffstein
**GOFFSTEIN LAW, LLC**
7777 Bonhomme, Suite 1910
St. Louis, Missouri 63105
Phone: (314) 725-5151
Fax:    (314) 455-7278
*adam@goffsteinlaw.com*
*(Pro Hac Vice)*

James A. Morris, Esq. (CSBN 296852)
*jmorris@jamlawyers.com*
Shane. A. Greenberg, Esq. (CSMN 210932)
*sgreenberg@jamlawyers.com*
**MORRIS LAW FIRM**
4111 W. Alameda Avenue, Suite 611
Burbank, CA 91505
Tel:    (747) 283-1144
Fax:  (747) 283-1143

Attorneys for Plaintiffs

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| KALEE PRZYBYLAK and ANIL KUMAR URMIL, on behalf of themselves and all others similarly situated, | Case No. 2:19-CV-02038-PA-GJSx |
| | Hon. Percy Anderson |
| Plaintiffs, | **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT** |
| v. | |
| BISSELL BETTER LIFE, LLC. | Date:          July 22, 2019 |
| Defendant. | Time:          1:30 p.m. |
| | Courtroom:      9A |

# TABLE OF CONTENTS

Page

I.    INTRODUCTION ................................................................................1

II.   STANDARD OF REVIEW ..................................................................2

III.  THE MOTION SHOULD BE DENIED .............................................3

  A.  Defendant Failed to Comply With Local Rule 7-3 ....................3

  B.  The Court Should Reject Defendant's Arguments for Dismissal of the Nationwide Class Action Claims ...............................................................3

    1.  Defendant's Arguments Are Contrary to the Ninth Circuit's Decision in *Melendres* ..................................................................3

    2.  Rule 12(b)(6) Does Not Permit Dismissal of Class Allegations ...........7

  B.  Plaintiffs Have Pled With Particularity ...................................8

    1.  Plaintiffs' Allegations Satisfy Rule 9(b) .............................8

    2.  Plaintiffs have Standing to Bring Claims Based Upon Defendant's Website......10

  C.  Defendants' Arguments for Dismissal of Specific Claims Lack Merit....................12

    1.  Plaintiffs' Allegations Satisfy the Reasonable Consumer Standard ...................12

      a.  Under *Williams* and *Balser*, Whether the Labeling Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings ...............................................12

      b.  Defendant's Alternative Interpretations of The Challenged Misrepresentations and Labeling Cannot Support Dismissal ...............................14

      c.  Defendant's Arguments That the Ingredients List or Other Labeling Clear Up Any Misconception Is Contrary to *Williams*........................19

    2.  Plaintiff States a Claim Under the Magnuson-Moss Warranty Act ...................21

      a.  Plaintiff Has Alleged Warranty Claims Under California Law ..........................21

      b.  Plaintiff Has Alleged a "Written Warranty" Under the MMWA........................21

    3.  Plaintiff Sufficiently States Causes of Action for State Warranty Claims..........22

      a.  Plaintiff Sufficiently States an Express Warranty Claim ...................22

      b.    Plaintiff Sufficiently States A Claim For Breach of the Implied Warranty of Merchantability ................................................................................... 23

      4.    Plaintiffs Have Properly Pled Their Remaining Claims ..................................... 25

IV.  CONCLUSION ........................................................................................ 25

1

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

2

<u>Cases</u>

3

*Ashcroft v. Iqbal*

4
   556 U.S. 662, 129 S. Ct. 1937 (2009)……………..…………………..…..2

5

*Astiana v. Ben & Jerry's Homemade, Inc.*

   2011 WL 2111796 (N.D. Cal. May 26, 2011)……………………..…….…8, 9, 10

6

7

*Atkinson v. Elk Corp. of Texas*

   142 Cal. App. 4th 212 (2006)……………………………………………...24

8

9

*Babaian v. Dunkin' Brands Grp. Inc.*

   2018 U.S. Dist. LEXIS 98673 (C.D. Cal. June 12, 2018)……………………………….6

10

*Balser v. Hain Celestial Grp., Inc.*

11
   640 F. App'x 694 (9th Cir. 2016)…………………………………………12, 13, 16

12

*Barakezyan v. BMW of N. Am., LLC,*

   2016 WL 2840803 (C.D. Cal. Apr. 7, 2016)……………………………………….....25

13

14

*Barron v. Snyder's-Lance, Inc.*

   2015 WL 11182066 (S.D Fla. Mar. 20, 2015)……………………………………….20

15

16

*Bohac v. Gen. Mills, Inc.*

   2014 WL 1266848 (N.D. Cal. Mar. 26, 2014)……………………………………….20

17

*Boswell v. Costco Wholesale Corp.*

18
   2016 WL 3360701 (C.D. Cal. June 6, 2016)……………………………...………….23

19

*Brazil v. Dole Packaged Foods, LLC*

   660 F. App'x 531 (9th Cir. 2016)……………………………………………….....12

20

21

*Brenner v. Procter & Gamble Co.*

   2016 WL 8192946 (C.D. Cal. Oct. 20, 2016)……………………………………….22

22

23

*Brown v. The Hain Celestial Grp., Inc.*

   913 F.Supp.2d 881 (N.D. Cal. 2016)………………………………………..……….22

24

*Bruton v. Gerber Prods. Co.*

25
   2014 WL 172111 (N.D. Cal. Jan. 15, 2014) ……………………………………….5

26

*Cartwright v. Viking Indus., Inc.*

   249 F.R.D. 351, 356 (E.D. Cal. 2008)……………………………………………….24

27

28

*Casas v. Victoria's Secret Stores, LLC*

   2014 WL 12708972 (C.D. Cal. Oct. 20, 2014)…………………………………...…….3

*Clemens v. DaimlerChrysler Corp.*
  534 F.3d 1017 (9th Cir. 2008)……………………………………………………21, 24

*Corcoran v. CVS. Health Corp., Inc.*
  2016 WL 4080124 (N.D. Cal. July 29, 2016)……………………………...……6, 7

*Cover v. Windsor-Surry Co.*
  2016 WL 520991 (N.D. Cal. Feb. 10, 2016)………………………………………7

*Cruz v. Sky Chefs, Inc.*
  2013 WL 1892337 (N.D. Cal. May 6, 2013)…………………..……………………8

*Duraflame, Inc. v. Hearthmark, LLC*
  2013 WL 12177870 (N.D. Cal. Feb. 8, 2013)……………………………………18

*Easter v. Am. W. Fin.*
  381 F.3d 948 (9th Cir. 2004)………………………………………………………6

*Ellsworth v. U.S. Bank, N.A.*
  2014 WL 2734953 (N.D. Cal. June 13, 2014)…………………...…………………5

*Eminence Capital, LLC v. Aspeon, Inc.*
  316 F.3d 1048, 1052 (9th Cir. (2003)………………………………….……………2

*Fagan v. Neutrogena Corp.*
  2014 WL 92255 (C.D. Cal. Jan. 8, 2014)……………………..……………14, 19, 21

*Fallick v. Nationwide Mut. Ins. Co.*
  162 F.3d 410 (6th Cir. 1998)………………………………………………………4

*Forcellati v. Hyland's Inc.*
  876 F. Supp. 2d 1155 (C.D. Cal. 2012)…………………………………………6, 14

*Freeman v. Time, Inc.*
  68 F.3d 285 (9th Cir. 1995)………………………………………………………14

*Garcia v. Kashi Co.*
  43 F. Supp. 3d 1359 (S.D. Fla. 2014)……………………………………………20

*Gasser v. Kiss My Face, LLC*
  2017 WL 4773426 (N.D. Cal. Oct. 23, 2017)…………………...…………9, 16, 17, 22

*Gillibeau v. City of Richmond*
  417 F.2d 426 (9th Cir.1969)…………………………….…………………………7, 8

*Grodzitsky v. Am. Honda Motor Co.*
  2013 U.S. Dist. LEXIS 33387, at *32-33 (C.D. Cal. Feb. 19, 2013)……………………5

*Hairston v. South Beach Beverage Co.*
2012 WL 1893818 (C.D. Cal. May 18, 2012)……………………………………………20

*Haskell v. Time, Inc.*
857 F.Supp. 1392 (E.D. Cal. 1994)……………………………………………………..18

*Henderson v. Gruma Corporation*
2011 WL 1362188 (C.D. Cal. Apr. 2011……………………………………………….13

*In re 5-hour ENERGY Marketing and Sales Litig.*
2014 WL 5311272 (C.D. Cal. Sept. 4, 2014)…………………………………………….4

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*
2009 WL 9502003 (C.D. Cal. July 6, 2009)…………………………………………….7

*In re Chrysler-Dodge-Jeep Ecododiesel Mktg., Sales Practices, & Prod. Liab. Litig.*
295 F.Supp.3d 927 (N.D. Cal. 2018)……………………………………………...…….5

*In re ConAgra Foods Inc.*
908 F. Supp. 2d 1090 (C.D. Cal. 2012)………………………………………………...10

*In re Ferrero Litigation*
794 F.Supp.2d 1107 (S.D. Cal. 2011)……………………………..…………………...11

*In re Hydroxycut Mktg. and Sales Practices Litig.*
801 F. Supp. 2d 993 (S.D. Cal. 2011)…………..……………………………………….5

*In re MyFord Touch Consumer Litig.*
46 F. Supp. 3d 936 (N.D. Cal. 2014)……………………………………………………25

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*
754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010)……………………………………….24, 25

*In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability Litig*
2017 WL 3058563 (N.D. Cal. July 19, 2017)…………………………………………...5

*Janney v. General Mills*
2014 WL 1266299 (N.D. Cal. Mar. 26, 2015)………………………………..…………18

*Johnson v. Nissan N. Am., Inc.*
272 F. Supp. 3d 1168 (N.D. Cal. 2017)……………………………………..………….7

*Jou v. Kimberly-Clark Corp.*
2013 WL 6491158 (N.D. Cal. Dec. 10, 2013)……………………………..8, 10, 14, 18, 19, 20

*Kane v. Chiobani*
2013 WL 5289253 (N.D. Cal. Sept.19, 2013)………………………………………….20

*Kearns v. Ford Motor Co.*
    567 F.3d 1120 (9th Cir. 2009)……………………………………………………..8, 10

*Kutza v. Williams-Sonoma, Inc.*
    2018 WL 5886611 (N.D. Cal. November 9, 2018)…………………………………….4, 5

*Kwikset Corp. v. Superior Court*
    51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011)…………………………...11

*Madenlian v. Flax USA, Inc.*
    2014 WL 7723578 (C.D. Cal. March, 31, 2014)……………………………………….20

*Mazza v. American Honda Motor Co.*
    666 F.3d 581 (9th Cir. 2012)……………………….....……………………………………..7

*McCary v. Elations, Co.*
    2013 WL 6403073 (C.D. Cal. July 12, 2013)……………………………………………11

*Melendres v Arpaio*
    784 F.3d 1254 (9th Cir. 2015)………………………………………………….3, 4, 5, 6, 7

*Michael v. Honest Co., Inc.*
    2016 WL 8902574 (C.D. Cal. Dec. 6, 2016)……………………………...…………13

*Newcal Indus., Inc. v. Ikon Office Solution*
    513 F.3d 1038 (9th Cir. 2008)……………………………………………………………18

*Parker v. J.M. Smucker Co.*
    2013 WL 4516156 (N.D. Cal. Aug. 23, 2013)…………………………………...13, 18

*Paulino v. Conopco, Inc.*
    2015 WL 4895234 (E.D.N.Y. Aug. 17, 2015)……………….…………………...18

*Pecanha v. The Hain Celestial Group, Inc.*
    2018 WL 534299 (N.D. Cal. Jan. 24, 2018)……………………………….…….5

*Pelayo v. Nestle USA, Inc.*
    989 F. Supp. 2d 973 (C.D. Cal. 2013)…………………………………………...19, 20

*Perez v. Monster, Inc.*
    149 F. Supp. 3d 1176 (N.D. Cal. 2016)…………………...……………………24

*Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*
    642 F. Supp. 2d 1112 (C.D. Cal. 2009)……………………………………………10

*Real v. Johnson & Johnson Consumer Cos.*

2016 U.S. Dist. LEXIS 80044 (C.D. Cal. Feb. 8, 2016)……………………………………...5

*Segedie v. Hain Celestial Grp. Inc.*
2015 WL 2168374 (S.D.N.Y. May 7, 2015)………………………………………………20

*Shank v. Presidio Brands, Inc.*
2018 WL 510169 (N.D. Cal. Jan. 23, 2018)……………………………..……....16, 18

*Smith v. Jackson*
84 F.3d 1213, 1217 (9th Cir. 1996)……..………………………………………………2

*Southland Sod Farms v. Stover Seed Co.*
108 F.3d 1134 (9th. Cir. 1997)……………………………………………………...18

*Spokeo, Inc. v. Robins*
136 S. Ct. 1540 (2016)……………………………………..…………………………5

*Sosna v. Iowa*
419 U.S. 393 (1974)……………..…………………………………………………4

*Stotz v. Mophie Inc.*
2017 WL 1106104 (C.D. Cal. Feb. 27, 2017)……………………………………………4

*Surzyn v. Diamond Foods, Inc.*
2014 WL 2212216 (N.D. Cal. May 28, 2014)……………………………………………20

*Swearingen v. Late July Snacks LLC*
2017 WL 1806483 (N.D. Cal. May 5, 2017)……………………………………………9

*Tsan v. Seventh Generation, Inc.*
2015 WL 6694104 (N.D. Cal. Nov. 3, 2015)……………………………………………20

*Vicuna v. Alexia Foods, Inc.*
2012 WL 1497507 (N.D. Cal. Apr. 27, 2012)……..……………………..………12, 13

*Viggiano v. Johnson & Johnson*
2015 WL 12860480 (C.D. Cal. June 12, 2015)……………………………….……...…4, 6

*Viggiano v. Hansen Natural Corp.*
944 F.Supp.2d 877 (C.D. Cal. 2013)………………………………………………20

*Von Koenig v. Snapple Beverage Corp.*
713 F. Supp. 2d 1066 (E.D. Cal. 2010)…………………………..………………10

*Warth v. Seldin*
422 U.S. 490 (1975)……………………………………………………….……...…6

*Williams v. Gerber Products*

552 F.3d 934, 938 (9th Cir. 2008)………………………...………………12, 13, 16, 19

*Yumul v. Smart Balance, Inc.*
   733 F.Supp.2d 1117 (C.D. Cal. 2010)…………..……………………………...19

*Zakaria v. Gerber Prods. Co.*
   2015 WL 3827654 (C.D. Cal. June 18, 2015)……………………………..……23, 24

**Statutes**

15 U.S.C. § 2301……………………………………………………………………….2

15 U.S.C. §2301(1)…………………………………...………………………21

15 U.S.C. § 2301(6)(A)……………………………………………...………………21

Cal. Com. Code § 2314(2)(f)…………………………………………………23, 24

**Other Authorities**

40 Fed. Reg. 25721 (1975)…………………………………………………………21

40 Fed. Reg. 25722 (1975)…………………………………………………………21

75 Fed. Reg. 63552 (2010)…………………………………………………………20

75 Fed. Reg. 63586 (2010) ………………………………………………..………20

U.C.C. § 2-314…………………………………………………………………23

**Rules**

Fed. R. Civ. P. 9(b)……………………………………...…………………2, 8, 9, 10, 25

Fed. R. Civ. P. 12(b)(6)……………………………………………………7. 8, 14, 20

Fed. R. Civ. P. 15(a)(2)………………………………………………………………2

Local Rule 7-3…………………………………...…………………………………1, 3

## I.   INTRODUCTION

Defendant BISSELL Better Life, LLC ("Defendant" or "Better Life") exploits consumers' preference for natural products by representing to consumers that its Better Life household and personal care products (the "Products") accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." Reasonable consumers, including Plaintiffs Kalee Przybylak and Anil Kumar Urmil ("Plaintiffs"), understand these terms to mean that the Products are comprised only of ingredients that exist in nature without the addition of any extra chemicals or anything artificial.  But the Products are not "natural" because they contain ingredients that are synthetic, non-natural, and highly chemically processed.  And the Products are not made with "plant-derived cleaning agents" because they contain synthetic cleaning agents.

Defendant's Motion to Dismiss should be denied in its entirety for a number of reasons. As a preliminary matter, Defendant has failed to comply with the meet and confer requirements set forth in Local Rule 7-3.  Moreover, Defendant does not contest Plaintiffs' assertions.  In fact, it concedes that its Products contain unnatural and synthetic ingredients.  Motion To Dismiss ("MTD") at 1.  Instead, Defendant's main argument is that it is implausible that a reasonable consumer would actually believe its representations.  But the Ninth Circuit has repeatedly taken the view that the use of "natural" could reasonably be understood to mean "all natural" or "100% natural" and thus contain no unnatural and/or synthetic ingredients.   Nevertheless, whether a label representation is misleading is a question of fact that cannot be decided at the pleading stage.

Defendant argues that Plaintiffs lack standing to assert common law claims on behalf of a nationwide class.  But the Ninth Circuit takes the position that if a Plaintiff has standing to bring his individual claims (which is not disputed here), then the standing inquiry is concluded and any

arguments about whether they may represent other class members must wait for class certification. And Defendant's motion to dismiss is an improper vehicle for dismissal of class allegations.

Defendant's other arguments are equally unavailing. Plaintiffs' *Complaint* complies with Rule 9(b) of the Federal Rules of Civil Procedure. Defendant's argument that Plaintiffs lack standing to bring claims based upon Defendant's website is clearly not the case because the *Complaint* contains numerous allegations that Plaintiffs visited Defendant's website and relied on Defendant's "natural" representations. Plaintiff alleges sufficient facts and established claims for breach of express and implied warranties, as well as a violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* (the "MMWA"). Finally, Plaintiff has also established claims for negligent misrepresentation fraud, and unjust enrichment. Accordingly, Defendant's motion to dismiss should be denied.

## II.   STANDARD OF REVIEW

In ruling on a motion to dismiss, "[a]ll allegations are taken as true and construed in the light most favorable to the nonmoving party." *Smith v. Jackson*, 84 F.3d 1213, 1217 (9th Cir. 1996). If a complaint contains well-pleaded factual allegations, a court "should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1959 (2009). The Plaintiffs' complaint easily meets this standard.

Moreover, dismissal "without leave to amend is not appropriate unless it is clear…that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. (2003); *see also* Fed. R. Civ. P. 15(a)(2). Plaintiff respectfully requests leave to amend if necessary.

## III.   THE MOTION SHOULD BE DENIED

### A.   Defendant Failed to Comply With Local Rule 7-3

First, Defendants have failed to comply with the meet and confer requirements set forth in Local Rule 7-3. The Motion was filed the same day that Defendant purportedly attempted to meet and confer by email.  On June 17, 2019, just hours before filing the Motion to Dismiss, Defendant attempted to meet and confer in advance of filing a motion to dismiss.  Orlowsky, Decl. ¶ 3. Defendant sent an email to Plaintiffs' counsel without making a single attempt to confer with Plaintiff telephonically or in person.  Orlowsky, Decl. ¶ 4.   That same day, on June 17, 2019, barely five (5) hours after the meet and confer effort was initiated, Defendant filed the instant Motion to Dismiss in direct violation of Local Rule 7-3.  Orlowsky, Decl. ¶ 5, Dkt 22.

### B.   The Court Should Reject Defendant's Arguments for Dismissal of the Nationwide Class Action Claims

Defendant asks the Court to dismiss Plaintiffs' nationwide allegations because Plaintiffs lack standing to pursue and fail to allege non-California claims on behalf of non-California consumers.  MTD at 7.  That request is contrary to the law for two independent reasons set forth below.

#### 1.   Defendant's Arguments Are Contrary to the Ninth Circuit's Decision in *Melendres*

In *Melendres v Arpaio*, the Ninth Circuit explained that there are two rubrics for determining whether a lead plaintiff may pursue claims on behalf of unnamed class members: the "standing approach" and the "class certification approach."

> The "standing approach" treats dissimilarities between the claims of named and unnamed plaintiffs as affecting the "standing" of the named plaintiff to represent the class…The "class certification approach," on the other hand, "holds that **once the named plaintiff demonstrates her individual standing to bring a claim, the standing inquiry is concluded**", and the court proceeds to consider whether the Rule 23(a) prerequisites for class certification have been met."

784 F.3d 1254, 1261-62 (9th Cir. 2015) (emphasis added, internal citations omitted).  The Ninth

Circuit stated, "[w]e adopt the class certification approach," and warned against "conflat[ing]

standing and class certification."  *Id.* at 1262.

As a result, "representative parties who have a direct and substantial interest have

standing," and "the question whether they may be allowed to present claims on behalf of others

who have similar, but not identical, interests depends not on standing, but on an assessment of

typicality and adequacy of representation."  *Id.; see also, e.g., Sosna v. Iowa*, 419 U.S. 393, 403

(1974) (once a named plaintiff establishes individual standing, the examination shifts "from the

elements of justiciability to the ability of the named representatives to fairly and adequately

protect the interests of the class").[1]

District courts have followed *Melendres* in a variety of consumer class actions where the

defendant argued on a motion to dismiss that the plaintiff lacked standing to represent certain

putative class members.  *See, e.g., Stotz v. Mophie Inc.*, 2017 WL 1106104, at *6 (C.D. Cal. Feb.

27, 2017); *In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Prods. Liability

Litig¸* 2017 WL 3058563, at *4 (N.D. Cal. July 19, 2017).  Consistent with *Melendres*, numerous

courts in the Ninth Circuit also have held that where a named plaintiff has established individual

standing to bring claims in his or her own right, but asserts parallel common law claims arising

under different states' laws on behalf of a putative class, the issue is resolved in connection with

Rule 23's requirements.  *See Viggiano v. Johnson & Johnson*, 2015 WL 12860480, at *6 (C.D.

Cal. June 12, 2015) (rejecting same argument Defendant makes here); *In re 5-hour ENERGY

Marketing and Sales Litig.*, 2014 WL 5311272, at *18 (C.D. Cal. Sept. 4, 2014) (same); *Kutza v.

Williams-Sonoma, Inc.*, 2018 WL 5886611, at *2-3, (N.D. Cal. November 9, 2018) (same);

---

[1] *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 423 (6th Cir. 1998) ("whether a plaintiff will
be able to represent the putative class, including absent class members, depends solely on whether
he is able to meet the additional criteria encompassed in Rule 23").

1   *Pecanha v. The Hain Celestial Group, Inc.*, 2018 WL 534299, at *3 (N.D. Cal. Jan. 24, 2018)

2   (rejecting same argument Defendants make here); *Ellsworth v. U.S. Bank, N.A.*, 2014 WL

3   2734953, at *31 (N.D. Cal. June 13, 2014) (same); *Bruton v. Gerber Prods. Co.*, 2014 WL

4   172111, at *13 (N.D. Cal. Jan. 15, 2014) (same); *In re Hydroxycut Mktg. and Sales Practices*

5   *Litig.*, 801 F. Supp. 2d 993, 1004-5 (S.D. Cal. 2011) (same).[2]

6

7        Here, Defendant does not dispute that Plaintiffs have standing to bring their individual

8   claims for violation of the MMWA, breach of express warranty, breach of implied warranty of

9   merchantability, unjust enrichment, negligent misrepresentation, and fraud, and therefore under

10  *Melendres* "the standing inquiry is concluded." *Melendres*, 784 F.3d at 1262.  Defendant may

11  counter that standing is "claim-specific," and therefore Plaintiffs must demonstrate that they also

12  have standing to bring separate "claims" under the laws of other states, but there are two problems

13  with that argument.  The first is that it does not fit within any of the traditional three elements of

14  standing—injury, traceability, and redressability—which have never posed a high bar to

15  justiciability anyway.  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).[3]  The named

16

17

18

19  ─────────────────────

20  [2] *See also Real v. Johnson & Johnson Consumer Cos.*, 2016 U.S. Dist. LEXIS 80044, at *15 (C.D.
    Cal. Feb. 8, 2016) (denying motion to strike class allegations because defendant's motion was
    premature); *Grodzitsky v. Am. Honda Motor Co.*, 2013 U.S. Dist. LEXIS 33387, at *32-33 (C.D.
21  Cal. Feb. 19, 2013) (denying motion to strike nationwide class allegations, noting that
    "[d]efendant has yet to file an answer and discovery has not yet begun; given the early stage of the
22  proceedings… it is premature to determine if this matter should proceed as a class action).
    [3] Defendant argues that *Melendres* does not govern here.  MTD at 8, fn 3.  It distinguishes
23  *Melendres*, on grounds that the claims were federal and constitutional claims, so standing to assert
    state-law claims was not at issue, and the plaintiffs did not attempt to assert claims under the laws
24  of states in which they did not reside or were not injured.  *Id.*  But courts have rejected this exact
    argument.  *See In re Chrysler-Dodge-Jeep Ecododiesel Mktg., Sales Practices, & Prod. Liab.*
25  *Litig.,* 295 F.Supp.3d 927 (N.D. Cal. 2018); *Kutza*, 2018 WL 5886611 at *2-3.  Here, this is not an
    instance where a California plaintiff seeks to represent residents of other states under a plethora of
26  state consumer statutes with potentially differing procedural and substantive requirements, and
    scopes.  Rather, the claims are brought under a federal statute, and the common law, which likely
27  will not vary much among the states.  *See Id.*

28

1    Plaintiffs satisfy each of those elements regardless of whether they represent out-of-state class

2    members.

3            Second, the "essential" issue in standing is whether the "representative parties . . . have a

4    direct and substantial interest" in the "dispute." *Melendres*, 784 F.3d at 1262; *Warth v. Seldin*,

5    422 U.S. 490, 498 (1975) (the "essential" question of standing "is whether the litigant is entitled to

6    have the court decide the merits of the dispute or of particular issues").  The dispute in a false

7    labeling case like this one is the same for Plaintiff and out-of-state class members "because

8    Defendant's conduct was uniform and likely affected consumers in every state in a similar

9    fashion." *Viggiano*, 2015 WL 12860480, at *6.  Notably, Defendant does not argue that

10   adjudicating the claims of out-of-state class members somehow involves resolution of materially

11   different facts or legal issues, and even if Defendant argues that is the case, under *Melendres* that

12   

13   is a question about commonality or predominance, not standing.[4]

14           Finally, the decisions cited by Defendant are not instructive.  Defendant cites *Easter v. Am.*

15   *W. Fin.* 381 F.3d 948 (9th Cir. 2004) in support of its argument that a "court may address issues of

16   

17   standing on a motion to dismiss."  MTD at 7.  But *Easter* was decided more than ten (10) years

18   before *Melendres*, and addressed whether a plaintiff had standing on a ***motion for summary***

19   ***judgment***.  And both *Corcoran v. CVS. Health Corp., Inc.*, 2016 WL 4080124 (N.D. Cal. July 29,

20   2016) and *Babaian v. Dunkin' Brands Grp. Inc.*, 2018 U.S. Dist. LEXIS 98673, at *8 (C.D. Cal.

21   June 12, 2018) are not instructive because the plaintiffs did not cite *Melendres*.  Further, the

22   

23   plaintiffs in *Corcoran* apparently conceded (erroneously) that courts have discretion to dismiss

24   _____

25   [4] Defendant also argues that Plaintiffs "attempt to bring claims apparently under laws in which
     they do not reside and were not injured, even though such laws are not even identified in the
     complaint.  MTD at 8, fn. 3.  But whether differences in state laws are material for purposes of

26   class certification requires a case-by-case analysis of the facts, and even where they are material,
     the issue can often be resolved by narrowing the class definition or certifying subclasses.  *See*

27   *Forcellati v. Hyland's Inc.*, 876 F. Supp. 2d 1155, 1159 (C.D. Cal. 2012) (denying motion to

28   dismiss class allegations).

nationwide allegations at the pleading stage.  *See Corcoran,* 2016 WL 4080124 at *3.  Moreover,

the court in *Corcoran* relied on *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 2009 WL

9502003, at *6 (C.D. Cal. July 6, 2009) in dismissing claims based on plaintiffs' lack of standing

– another case that pre-dates the Ninth Circuit's decision in *Melendres*.  These decisions are

clearly contrary to the Ninth Circuit's adoption of the "class certification approach" in *Melendres,*

which held that courts do not have discretion to dismiss nationwide allegations at the pleading

stage.  *Id.* at 1282.

In both *Johnson v. Nissan N. Am., Inc.*, 272 F. Supp. 3d 1168, 1171 (N.D. Cal. 2017) and

*Cover v. Windsor-Surry Co.*, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016), the courts relied

on *Mazza v. American Honda Motor Co.,* 666 F.3d 581, 587 (9th Cir. 2012), which precedes

*Melendres*, in concluding that the named plaintiffs in those cases could not assert state law claims

under state laws they did not represent.  *Johnson*, 272 F. Sup. 3d at 1175; *Cover*, 2016 WL

520991, at *5.  Moreover, the court in *Mazza* undertook a class-wide choice-of-law analysis ***at the***

***class certification stage***, rather than the pleading stage.  As a result, Defendant failed to cite any

cases that refused to follow *Melendres*.

## 2.   Rule 12(b)(6) Does Not Permit Dismissal of Class Allegations

Defendant does not challenge the standing of Plaintiffs under the laws of their home state.

Instead, Defendant is seeking premature resolution of class allegations, at least with respect to a

nationwide class.  But the Ninth Circuit has opined that "compliance with Rule 23 is not to be

tested by a motion to dismiss for failure to state a claim."  *Gillibeau v. City of Richmond*, 417 F.2d

426, 432 (9th Cir. 1969).  As this Court has explained, "[t]here are [three] convincing reasons" for

concluding that motions to dismiss class allegations are "improper":

> First, Rule 12(b)(6) permits a party to challenge a pleading on the basis that it
> fails "to state a claim upon which relief can be granted."  But class treatment is a
> "procedural device," not a claim for relief.  Thus, by its plain language, Rule
> 12(b)(6) outs itself as the wrong device for attacking class treatment.  Second,

> decisions rendered under Rule 12(b)(6) and Rule 23 are subject to different standards of review. [Third], Rule 23(f) provides a mechanism by which a plaintiff (or defendant) can petition for review of a denial (or grant) of class certification under Rule 23, whereas, de facto denials of "classwide claims" under Rule 12(b)(6) are ineligible for immediate discretionary review (barring exceptional circumstances).

*Casas v. Victoria's Secret Stores, LLC*, 2014 WL 12708972, at *9 (C.D. Cal. Oct. 20, 2014) (internal citations omitted). Although a few courts have resolved class allegations at the pleading stage, that practice is contrary to the Ninth Circuit's decision in *Gillibeau* and "it is in fact rare to do so in advance of a motion for class certification." *Cruz v. Sky Chefs, Inc.*, 2013 WL 1892337, at *7 (N.D. Cal. May 6, 2013) (collecting authorities). Accordingly, the Court can and should reject Defendant's arguments on procedural grounds.

### B. Plaintiffs Have Pled With Particularity

#### 1. Plaintiffs' Allegations Satisfy Rule 9(b)

Defendant claims that Plaintiffs' Complaint does not comply with Rule 9(b) of the Federal Rules of Civil Procedure. MTD at 9-111. Not so. To satisfy Rule 9(b), the complaint must allege the "who, what, when, where, and how" of the circumstances constituting fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125-26 (9th Cir. 2009). The purpose of Rule 9(b) is "'to give defendants notice of the particular misconduct…so that they can defend against the charge and not just deny that they have done anything wrong.'" *Jou v. Kimberly-Clark Corp.*, 2013 WL 6491158, *4 (N.D. Cal. Dec. 10, 2013) (quoting *Kearns*, 567 F.3d at 1124). "When alleging that fraudulent statements were made, a plaintiff must identify the false statements and indicate why they were false." *Id.*

This is not a difficult standard to meet in the context of natural labeling cases. In *Astiana v. Ben & Jerry's Homemade, Inc.*, 2011 WL 2111796, at *6 (N.D. Cal. May 26, 2011), for example, the plaintiffs claimed that the defendants' statements were allegedly misleading because they did not disclose that their products contained synthetic ingredients. The plaintiffs alleged that

the "who" was the defendants, the "what" was the statement that product was "all natural," the "when" was "since at least 2006," and "throughout the class period," and the "where" was on the product labels. *Id.* The court found in *Astiana* that these allegations sufficiently explained the "who, what, when, where, and how" of the alleged deception. *See Swearingen v. Late July Snacks LLC*, 2017 WL 1806483 at *6 (N.D. Cal. May 5, 2017) (explaining *Astiana*); *see also, e.g., Gasser v. Kiss My Face, LLC,* 2017 WL 4773426, at *6 (N.D. Cal. Oct. 23, 2017) (denying motion to dismiss under Rule 9(b) in "natural" labeling case). The allegations here are similar to those alleged in *Astiana*:

- **Who:** "This is a class action lawsuit against Defendant Bissell Better Life, LLC for selling its household and personal care products as accomplishing their purpose 'NATURALLY,' 'natural,' and/or made with '100% plant-derived cleaning agents' or 'plant-derived cleaning agents,' when, in fact, they contain unnatural and/or synthetic ingredients. *Complaint* ¶ 1.

- **What and Where:** "Defendant's marketing materials are replete with statements that the Products are natural, plant-derived, and non-toxic and the labels of all of the Products state that the products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." *Id.* ¶¶ 28-32; *see also id.* at ¶¶ 33-34 (depicting labeling).

- **When:** During the class period alleged herein, Plaintiffs purchased several Better Life Products because they saw and relied on the labeling, advertising, the Defendant's website, and read the packaging, which represented that the Products accomplish their purpose "NATURALLY," are "natural" and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." *Id.* ¶¶ 14-17. Plaintiffs understood this to mean that they were "purchasing natural products that did not contain any unnatural and/or synthetic ingredients." *Id.* ¶¶ 15, 17.

- **How:** "Defendant falsely, misleadingly, and deceptively labels the Products as accomplishing their purpose 'NATURALLY,' 'natural,' and/or made with '100% plant-derived cleaning agents' or 'plant-derived cleaning agents.' The Products do not accomplish their purpose 'NATURALLY' and are not 'natural' because they contain unnatural and/or synthetic ingredients, such as PEG-150 stearate, phenoxyethanol, ethylhexyglycerin, methylisothiazolinone and caprylyl/capryl glucoside. The products are not made with only 'plant-derived cleaning agents' because they contain unnatural and/or synthetic cleaning agents, such as caprylyl/capryl glucoside, decyl glucoside, sodium carbonate, and sodium citrate." *Id.* ¶ 7.

Defendant also argues that the Complaint fails to allege any facts regarding the timing of Plaintiffs' purchases.  MTD at 11.  Although Plaintiffs do not specify the particular date on which they purchased the Products, district courts in this Circuit have held that allegations that a misleading statement was made throughout the class period satisfy the Rule 9(b) particularity standard.  *See In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1099-100 (C.D. Cal. 2012) ("*Kearns* suggests that the relevant 'when' is either when the allegedly misleading statement was made or when it was viewed or heard by the plaintiff, not when it resulted in a purchase, [citation omitted.]  The complaint asserts that the '100% Natural' representation appeared on product labeling and in marketing of the products throughout the class period."); *Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (holding that Rule 9(b) was satisfied where plaintiff alleged that "between March 4, 2005 and March 4, 2009," defendant's product label contained alleged misrepresentations); *Pom Wonderful LLC v. Ocean Spray Cranberries, Inc.*, 642 F. Supp. 2d 1112, 1112 (C.D. Cal. 2009) (holding that Rule 9(b) was satisfied because plaintiff alleged that a product label contained the same misrepresentation throughout the class period); *see also Astiana*, No. C 10-4387 PJH, 2011 WL 2111796, at *6 (same). As a result, Plaintiffs' allegations are sufficient to plead with particularity the who, what, when, where, and how of the alleged fraudulent misrepresentations that form the basis of Plaintiffs' fraud, UCL, FAL, and CLRA claims.  As a result, the allegations here are more than sufficient under *Kearns* and *Jou*.

## 2.    Plaintiffs have Standing to Bring Claims Based Upon Defendant's Website

Finally, Defendant claims that due to the *Complaint's* lack of specificity and failure to demonstrate actual reliance, "Plaintiffs cannot base any claims upon representations allegedly made on Defendant's website."  MTD at 11-12.  But the *Complaint* clearly demonstrates that Plaintiffs' have standing to bring claims based on Defendant's website.  In order to assert a claim

under the UCL, FAL, or CLRA, the plaintiff must demonstrate actual reliance.  *See Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 326, 120 Cal.Rptr.3d 741, 246 P.3d 877 (2011).  As such, Plaintiff must actually rely on the allegedly false or misleading statements prior to purchasing the product.  *Id.*

The decisions cited by Defendant demonstrate that the Plaintiffs have standing.  MTD at 11-12.  In *In re Ferrero Litigation*, 794 F.Supp.2d 1107, 1112 (S.D. Cal. 2011)*,* the plaintiffs alleged that Ferrero's Nutella website contained various misrepresentations, but in the complaint plaintiffs alleged that they only relied on representations from Nutella's label and television advertisements in purchasing Nutella.  The court found that based on these allegations, plaintiffs did not actually rely on Nutella's website before making their purchases and lacked standing to challenge the statements under the UCL, FAL, and CLRA.  *Id.*  Likewise, in *McCary v. Elations, Co.* 2013 WL 6403073, at *8 (C.D. Cal. July 12, 2013), the plaintiffs alleged that the Elations website contained various misrepresentations, but the amended complaint did not allege that the plaintiff looked at or relied on anything on Defendant's website before purchasing Elations.  As a result, the court found that plaintiff did not actually rely on any website statements and did not have standing to bring claims based on those statements.  *Id.*

Here, the *Complaint* contains numerous allegations that Plaintiffs visited Defendant's website and relied on Defendant's "natural" representations.  Plaintiffs "purchased the Better Life Products because [they] saw…the Defendant's website…which represented that the Products accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." *Complaint* ¶¶ 15, 17; *see also id.* ¶¶ 31, 32.  Plaintiffs "relied on Defendant's false, misleading, and deceptive representations that the Products accomplish their purpose 'NATURALLY,' are 'natural,' and/or made with 'plant-derived cleaning agents.' *Id.* ¶¶ 15, 17.  Thus, Plaintiffs have adequately pled elements of materiality and reliance with the requisite particularity.

C.      **Defendants' Arguments for Dismissal of Specific Claims Lack Merit**

1.      **Plaintiffs' Allegations Satisfy the Reasonable Consumer Standard**

In an argument better served by a motion for summary judgment, Defendant argues that Plaintiffs' claims under the CLRA, UCL, and FAL are implausible because no reasonable consumer viewing Defendant's statements that its Products are accomplish their purpose "NATURALLY," are "natural," and/or made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" would be deceived into believing that the Products are natural and do not contain any unnatural and/or synthetic ingredients.  MTD at 12-18.  Such an argument is flawed both as a matter of procedure and of substance.  First, a reasonable consumer's interpretation of a labeling claim is not something that can be determined at the motion to dismiss stage.  Second, it is clear from the allegations that a reasonable consumer would be entirely justified in taking Defendant's representations and labeling claims at face value.

a.      **Under *Williams* and *Balser*, Whether the Labeling Has the Capacity to Deceive or Confuse Reasonable Consumers Is a Factual Issue Not Susceptible to Resolution on the Pleadings**

"Whether a business practice is deceptive, misleading, or unfair is ordinarily a question of fact to be decided by a jury."  *Balser v. Hain Celestial Grp., Inc.*, 640 F. App'x 694, 696 (9th Cir. 2016); *Williams v. Gerber Products*, 552 F.3d 934, 938 (9th Cir. 2008) ([W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" on the pleadings absent a "rare situation.").[5]  This includes "natural" claims.  *See e.g., Brazil v. Dole Packaged Foods, LLC*, 660 F. App'x 531, 533-34 (9th Cir. 2016) (reversing summary judgment for defendant in "natural" labeling case due to question of fact over the reasonable consumer standard); *Vicuna v. Alexia Foods, Inc.*, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012)

---

[5] Defendant relies heavily on *Williams* in its Motion to Dismiss, but fails to address the Ninth Circuit's conclusion that the "reasonable consumer" test is a question of fact not appropriate for consideration on a motion to dismiss.  MTD at 13, 16.

("Because the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute, the court finds that these claims cannot be resolved at this stage of the litigation."); *Parker v. J.M. Smucker Co.*, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (allegations that a reasonable consumer would believe that a product labeled as "all natural" contained no bioengineered or chemically altered ingredients "cannot be resolved as a matter of law."). Accordingly, Defendant's argument that reasonable consumers would not be deceived by its labeling is not appropriate on a motion to dismiss.[6]

Against this weight of authority, Defendant argues that no reasonable consumer would be deceived by the its labeling statements. MTD at 12-17. Defendant goes so far to claim that these representations are true and that products labeled "NATURALLY," "natural," "made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents" means that the Products contain synthetic ingredients. *Id*. Thus, in Defendant's view, any reasonable interpretation of these terms is entirely consistent with the presence of purportedly unnatural or synthetic ingredients. *Id.*

The flaw in that argument is that it requires the Court to resolve a question of fact about how a reasonable consumer would construe the labeling, which is precisely what *Williams* and *Balser* forbid. *See, e.g., Williams*, 552 F.3d at 938-39. In fact, the challenged statements here (e.g. ""NATURALLY," "natural," "made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents") are not that different from the statement in *Williams* that the product was "made with 'fruit juice and other all natural ingredients.'" *Id.* at 936 (quoting labeling). *Williams*

---

[6] This Court has followed has followed *Williams* and denied motions to dismiss in natural labeling cases. *See Michael v. Honest Co., Inc.*, 2016 WL 8902574, at *22 (C.D. Cal. Dec. 6, 2016) (collecting authorities denying motions to dismiss in natural labeling cases); *Henderson v. Gruma Corporation*, 2011 WL 1362188, at *11 (C.D. Cal. Apr. 2011) ("Here, Defendant's products allegedly contain artificial trans fats. construing the complaint in the light most favorable to the Plaintiffs, as the Court is obligated to do, these products could be found to be "unnatural.").

demonstrates that the fact that Defendant can propose one plausible interpretation of the labeling here cannot support dismissal because it is not the *only* plausible interpretation.

*Fagan v. Neutrogena Corp.*, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014) is directly on point.  In *Fagan*, the defendant argued on a motion to dismiss that, as a matter of law, the label "100% naturally sourced sunscreen ingredients" was not deceptive because it only referred to specific ingredients.  The court rejected that argument, explaining that the reasonable consumer test "'must be evaluated from the vantage of a reasonable consumer,'" not the vantage of the defendant.  *Id.*  (quoting *Freeman v. Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)).  "Defendant's argument that the representations are literally true because the term '100%' only applies to the ingredients in the products that provide protection from the sun (and not to other ingredients in the lotions that serve other purposes) rests on one possible interpretation of the language, but it is not the only possible interpretation."  *Id.*  Hence, whether reasonable consumers would adopt the defendant's interpretation or the plaintiff's interpretation could not be resolved on the pleadings. *Id.*

Finally, in *Jou* the court denied a motion to dismiss claims concerning diapers labeled as "pure & natural."  2013 WL 6491158 at *1.  Like Defendant in this case, the defendants in *Jou* claimed that a reasonable consumer could never be misled by the "pure & natural" representation. The court rejected that argument, holding that "[w]hether a reasonable consumer would agree with Plaintiffs ('natural' means no non-natural ingredients) or with Defendant ('natural' means at least one natural ingredient among other, possibly non-natural ingredients) or with neither is not a question that can be resolved on a Rule 12(b)(6) motion."  *Id.* at *7.

**b.** **Defendant's Alternative Interpretations of The Challenged Misrepresentations and Labeling Cannot Support Dismissal**

Defendant offers its own interpretations of the challenged statements and labeling contending that the Court can conclude, without evidence, that all reasonable consumers share

those interpretations.  MTD at 12-18.[7]  That is wrong.  Defendant's marketing materials and labels are replete with statements that the Products are "natural."  *See Complaint* ¶¶ 29-33.  Defendant's arguments that these statements are entirely consistent with the presence of purportedly "unnatural" or "synthetic' ingredients" are completely ridiculous.  These arguments are merely "smoke-and-mirrors" reflecting a misconstruction of Plaintiff's claims and based largely on self-serving and conclusory statements.

Defendant claims that no reasonable consumer could understand its use of the word "natural" to mean that it was describing all of the ingredients in the Product.  MTD 15-16.  But it defies common sense to argue that no person could read the numerous representations in advertisements, on social media, on its website, and packaging that the Products are "Natural," "NATURAL CLEANERS," "Powerful Clean, Naturally, "NATURAL CLEANING PRODUCTS FOR TODAY'S HOMEOWNER," "CLEANER BY NATURE," "PLANT-DERIVED INGREDIENTS," "NON-TOXIC," and conclude that the Defendant's products do not contain any "unnatural" or "synthetic" ingredients.  *Complaint* ¶¶ 29-33.  And the *Complaint* contains numerous allegations that Plaintiff visited Defendant's website and relied on Defendant's "natural" representations.  *See Complaint* ¶¶ 15, 17.  Thus, a reasonable consumer could conclude that the products are all natural and contain all-natural ingredients.

---

[7] Defendant argues that Plaintiffs do not have standing to represent class members as to products they did not purchase themselves because those products are not "substantially similar" to those that they did purchase. MTD at 13, fn 4.  This Court reserves the question of whether plaintiffs may assert claims on products they did not buy until ruling on a motion for class certification. *See, e.g., Forcellati*, 876 F.Supp.2d at 1161 (denying defendants' motion to dismiss because the "argument is better taken under the lens of typicality or adequacy of representation, rather than standing").  Moreover, all of the Products at issue are household and personal care products that all claim in marketing, including packaging and labels, to accomplish their purpose "NATURALLY," are "natural," and/or are made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents." *Complaint* ¶¶ 15, 17; *see also id.* ¶¶ 31, 32. These Products also contain largely the same synthetic and artificial ingredients.  Thus, Plaintiffs have sufficiently alleged that all of the Defendant's Products are "sufficiently similar" to survive a motion to dismiss.

Defendant next argues that, while the labels for some of the Products state that the soap is "natural," it does not say it is "100% Natural," "All Natural," or "non-synthetic."  MTD at 15-16.  As a result, Defendant claims that it is highly implausible that Plaintiffs (or any reasonable consumer) were deceived by its clear use of "natural."  MTD at 15-16.  But the Ninth Circuit has already concluded that Plaintiffs have offered a plausible interpretation of "natural":

> As another court in this district recently observed, "[i]t is now well established in the Ninth Circuit that for purposes of a motion to dismiss a reasonable consumer could understand the statements '100% natural' or 'all natural' or 'natural' together with other terms implying 'all natural' to mean that a product does not contain any non-natural ingredients."

*Shank v. Presidio Brands, Inc.*, 2018 WL 510169, *8-9 (N.D. Cal. Jan. 23, 2018) *Id.* at *8-9 (citing *Gasser*, 2017 WL 4773426, at *5, *Williams*, 552 F.3d at 938-39, and *Balser*, 640 Fed. Appx. at 695-96).  The court in *Shank* concluded that the statement on the labels of defendant's products "could easily be interpreted by consumers as a claim that all the ingredients in the product[s] were natural, which Shank has plausibly alleged is false."  *Id.* (citing *Williams*, 552 F.3d at 939).

Here, Defendant's representations that the Products are "natural," "NATURAL CLEANERS," "NATURAL CLEANING PRODUCTS," "Powerful Clean, Naturally," and "NON-TOXIC" could easily be interpreted by Plaintiffs as a claim that the all the Products contain only natural ingredients.  As a result, it is demonstrably plausible that Plaintiffs were misled by Defendant's repeated use of "natural."

Defendant goes onto argue that the use of "NATURALLY" on each and every one of the Products is not deceptive to the reasonable consumer.  MTD at 13-15.  But Defendant's "NATURALLY" claim is one of the most conspicuous phrases on the Product packaging.  It is displayed in all capital letters on the front of every Product.  *Complaint* ¶¶ 33-34.  In contrast, the words Defendant claims to be modifying such as "nourishing," "grease-kicking," or "skin soothing" are generally in smaller and less visible font.

1    Defendant also contends that, in its view, the "NATURALLY" labeling is only "used to

2    modify a different term representing a specific aspect of the Product – never the entire Product

3    itself." MTD at 14. But Defendant's use of "NATURALLY" modifies what the Products claims

4    to accomplish. And a reasonable consumer would clearly understand the terms "filth-fighting" on

5    Defendant's All-Purpose Cleaner to mean "dirt prevention" or "cleaning." Thus, claiming that a

6    cleaning product is "NATURALLY filth-fighting" could plausibly mean that the product is a

7    "natural" cleaner, which a reasonable consumer would clearly understand to mean that the product

8    does not contain any unnatural ingredients. And Defendant does not allege that the challenged

9    statements address specific ingredients that are in fact natural – only that "NATURALLY"

10   modifies the actual purpose of the Product.

11   Defendant cites only one case in support of its contention that its use of "NATURALLY"

12   on the Products' labels is not deceptive to a reasonable consumer. MTD at 14 (citing *Gasser*,

13   2018 WL 4538729, at *3). But the defendant in that case did not make numerous representations

14   on its product labels, in its marketing, and on its website that the products were "natural." And, in

15   *dicta,* the court posited a hypothetical in which the adverb "naturally" may deceive a reasonable

16   consumer in the context of the label, taken as a whole, "nourish naturally" …could be construed as

17   a representation that the active, effective ingredients—those that nourish—are natural." *Id.*

18   Here, Defendant uses numerous unnatural, synthetic ingredients that make the Products

19   "effective." For example, its "Naturally Nourishing Hand and Body Lotion" contains the

20   ingredient Caprylic/Capric Triglyceride – a synthetic mixture of glycerin, caprylic acid, and capric

21   acid. *Complaint* ¶¶ 42.c., 43. Defendant admits on its website that Caprylic/Capric Triglyceride

22   acts as a moisturizer and is thus the ingredient that "nourishes" and makes the product "effective."

23   Defendants other Products contain numerous synthetic ingredients such as decyl glucoside, lauryl

24   glucoside, and disodium cocoyl glutamate, that act as cleaning agents and thus make those

25   Products "effective."

26   Finally, Defendant's arguments regarding the "100% plant-derived cleaning ingredients"

27   and "plant-derived cleaning ingredients" representations are equally unavailing. MTD at 16-17.

28   Representations that a product's ingredients are "plant-derived" could be understood by a

reasonable consumer that the products' ingredients are all natural and contain only natural ingredients.  The Products are not made with only "plant-derived cleaning agents" because they contain unnatural and/or synthetic cleaning agents, such as caprylyl/capryl glucoside, decyl glucoside, and sodium carbonate.  *Complaint* ¶ 7.  And whether consumers understand "plant-based" to mean "all natural" presents a question of fact and is not appropriate for consideration on a motion to dismiss.  *Duraflame, Inc. v. Hearthmark, LLC*, 2013 WL 12177870, *3 (N.D. Cal. Feb. 8, 2013) ("While unclear whether consumers understand 'all natural'…to be synonymous with 'plant-based,' the terms are similar enough in modern usage to present a question of fact.").

Defendant's claims that its "NATURALLY" statements on the Products are nothing more than non-actionable 'puffery'" are futile.  MTD at 14-15.  First, courts have already ruled that use of the words "natural" and "naturally" on a defendant's packaging and website is not puffery "since a reasonable consumer could interpret [defendant's] statements as a definitive representation that its [] products contain only naturally derived ingredients, and do not contain synthetic ingredients." *Shank,* 2018 WL 510169, at *9 (collecting authorities).[8]  Second, Defendant is again advancing arguments that cannot be reconciled with this Court's decision in *Jou*. 2013 WL 6491158, at *7.[9]  In short, the Court should reject Defendant's puffery arguments.

---

[8] Many other courts have likewise rejected similar puffery arguments for dismissal in natural labeling cases. *E.g., Janney v. General Mills*, 2014 WL 1266299, at *5 (N.D. Cal. Mar. 26, 2015) (following *Jou* and rejecting puffery argument); *Parker*, 2013 WL 4516156, at *6 ("All Natural" is an affirmative claim about a product's qualities, and it does not amount to mere puffery because it is not outrageous and generalized"); *Paulino v. Conopco, Inc.*, 2015 WL 4895234, at *3 (E.D.N.Y. Aug. 17, 2015) ("At the present stage of litigation, I cannot say that a reasonable consumer could not interpret 'Naturals' to be a factual claim about the Suave NATURALS line of products").

[9] In contrast, among the handful of cases that Defendant cites, *none* held that "natural," "naturally," "grease-kicking," "filth-fighting," and "crumb crushing" labeling is puffery.  *See, e.g., Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997) (addressing only whether the terms "Less is More" or "50% Less Mowing" in advertising was puffery); *Haskell v. Time, Inc.*, 857 F.Supp. 1392, 1399 (E.D. Cal. 1994) (failed to address whether any specific advertising term was puffery); *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008) (addressing whether the language "deliver 95% up-time services in their IKON Contracts" was puffery).

### c. Defendant's Arguments That the Ingredients List or Other Labeling Clear Up Any Misconception Is Contrary to *Williams*

Defendant repeatedly argues that no reasonable consumer could be misled by its labeling because the ingredients are disclosed on the ingredients list on the back of the products and Defendant's website.  MTD at 17-18.  However, this Court has held that a defendant's argument that "any ambiguity is … dispelled by the explicit list of ingredients elsewhere on the product is foreclosed by [*Williams*]."  *Fagan*, 2014 WL 92255, at \*2; *see also, e.g., Jou*, 2013 WL 6491158, at \*8 ("under *Williams*, a defendant cannot rely on disclosures on the back or side panels of the packaging to contend that any misrepresentation on the front of the packaging is excused"); *see also Willi*ams, 552 F.3d at 939.  In *Williams,* the Ninth Circuit explained that "reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging."  552 F.3d 934, 939–40.  Therefore, an ingredient list should not "shield [a manufacturer] from liability for the deception" caused by misleading representations on a product's labeling. *Id.; see also Yumul v. Smart Balance, Inc.,* 733 F.Supp.2d 1117, 1129 (C.D. Cal. 2010) (*"Williams* stands for the proposition that where product packaging contains an affirmative misrepresentation, the manufacturer cannot rely on the small-print nutritional label to contradict and cure that misrepresentation.").  Here, Plaintiffs alleges that the "natural" representations on the Products' labeling contradicts the actual contents of the Products because they contain non-natural ingredients.[10]

Moreover, the authorities cited by Defendant do not support dismissal.  *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973 (C.D. Cal. 2013) is distinguishable.  Numerous courts have criticized *Pelayo* in natural labeling cases and declined to follow it.  *See Jou*, 2013 WL 6491158, at \*8 (stating *Pelayo* "is at odds with basic logic, contradicts the FTC statement on which it relies, and appears in conflict with the holdings of many other courts, including the Ninth Circuit.");

---

[10] Defendant will likely argue on reply that this rule does not apply because they disagree that the front labeling is misleading.  But they do not contend that the challenged ingredients (which are only disclosed in the ingredients list) are "natural."  Therefore, this is not a case where the Court can conclude, as a matter of law, that the front and back labels are consistent.  Here again, Defendant's argument turns on a factual dispute about how consumers construe the front labeling.

*Bohac v. Gen. Mills, Inc.*, 2014 WL 1266848, at *7 (N.D. Cal. Mar. 26, 2014) (same); *Tsan v. Seventh Generation, Inc.*, 2015 WL 6694104, at *5 (N.D. Cal. Nov. 3, 2015) ("*Pelayo's* reasoning has been heavily criticized by other courts").[11]  Moreover, contrary to *Pelayo*, the FTC has explicitly warned marketers that the use of the term "natural" may be deceptive:

> Marketers that are using terms such as natural must ensure that they can substantiate whatever claims they are conveying to reasonable consumers.  If reasonable consumers could interpret a natural claim as representing that a product contains no artificial ingredients, then the marketer must be able to substantiate that fact.

75 Fed. Reg. 63552, 63586 (Oct. 15, 2010) (emphasis added).

In *Madenlian v. Flax USA, Inc.*, 2014 WL 7723578, *4 fn. 7, (C.D. Cal. March, 31, 2014), this Court found that many of the cases cited by Defendant are inapposite because they involve products in which the allegedly deceptive labeling was not in fact inconsistent with the ingredients of the products at issue.  *Id.* (citing *Kane v. Chiobani,* 2013 WL 5289253, at *10 (N.D. Cal. Sept.19, 2013)[12] (finding that the "all natural" representations were not inconsistent with the presence of fruit or vegetable juice concentrate in the disputed yogurt products); *Hairston v. South Beach Beverage Co.,* 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) noting that the ingredient list was consistent with the front label statement of "all natural with vitamins")). [13]

All these arguments fail because they rest solely on Defendant's proffered inferences (largely from facts outside the pleadings) under a standard where the Court must accept all factual allegations in the complaint as true and draw all possible inferences in favor of Plaintiff.  And

---

[11] *See also Surzyn v. Diamond Foods, Inc.*, 2014 WL 2212216, at * 4 (N.D. Cal. May 28, 2014) ("The Court concludes the Pelayo is not persuasive, and declines Defendant's invitation to follow it."); *Segedie v. Hain Celestial Grp. Inc.*, 2015 WL 2168374, at *11 n.4 (S.D.N.Y. May 7, 2015) ("the weight of authority has shifted away from *Pelayo*"); *Barron v. Snyder's-Lance, Inc.*, 2015 WL 11182066, at *12 (S.D Fla. Mar. 20, 2015) ("[T]he Court remains unpersuaded by *Pelayo*."); *Garcia v. Kashi Co.*, 43 F. Supp. 3d 1359, 1384-85 (S.D. Fla. 2014) ("[N]o subsequent case has adopted *Pelayo's* position, and two cases have affirmatively rejected it.  … For the same reasons, this Court rejects *Pelayo*.").

[12] Defendant erroneously claims that *Kane* is a Central District of California case.  MTD at 17.

[13] Defendant also relies on *Viggiano v. Hansen Natural Corp.*, 944 F.Supp.2d 877, 982 n.38 (C.D. Cal. 2013), which cites *Hairston,* in support of its argument.

whether reasonable consumers would adopt the Defendant's interpretation or the Plaintiff's interpretation cannot be resolved on a Rule 12(b)(6) motion. *Jou*, 2013 WL 6491158 at *1; *Fagan*, WL 92255, at *2. Accordingly, Plaintiff has adequately alleged Defendant's "natural" claim and related marketing would mislead a reasonable consumer and therefore violate the CLRA, the FAL, and the UCL.

### 2. Plaintiff States a Claim Under the Magnuson-Moss Warranty Act

#### a. Plaintiff Has Alleged Warranty Claims Under California Law

Plaintiff agrees with Defendant that this Court's disposition of the state law warranty claims determines the disposition of the MMWA claims. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008). Because Plaintiff has alleged viable state law warranty claims, their MMWA claims must not be dismissed. *See* III.C.3., *infra*.

#### b. Plaintiff Has Alleged a "Written Warranty" Under the MMWA

Defendant, however, argues that the MMWA claim would also fail because the *Complaint* does not allege a "written warranty" under the MMWA. MTD at 19. Defendant is wrong. The MMWA broadly defines covered consumer products as "any tangible personal property . . . normally used for personal, family or household purposes…." 15 U.S.C. §2301(1). Moreover, the Federal Trade Commission, which is vested with rulemaking authority under the MMWA, has made clear that consumer products covered under the MMWA include products used for "personal, family, or household purposes...." 40 Fed. Reg. 25721, 25722 (1975).

Defendant's personal and household products are consumer products covered under the MMWA. 40 Fed. Reg. 25721. Moreover, the representations made by Defendant with respect to the "natural" contents of its products constitute written warranties under the MMWA insofar as they "relate to the nature of the material" and make promises and affirmations of fact as to the quality and contents of the product — that the products are "natural." 15 U.S.C. § 2301(6)(A).

### 3.  Plaintiff Sufficiently States Causes of Action for State Warranty Claims

#### a.  Plaintiff Sufficiently States an Express Warranty Claim

A plaintiff asserting a breach of warranty claim must allege facts sufficient to show that (1) the seller's statements constitute an affirmation of fact or promise or a description of the goods; (2) the statement was part of the basis of the bargain; and (3) the warranty was breached." *Gasser*, 2017 4773426, at *6.  Here, Plaintiff alleges an express warranty that the Products are comprised solely of ingredients that are "natural," accomplished their purpose "NATURALLY," and/or were made with "100% plant-derived cleaning agents" or "plant-derived cleaning agents."  Numerous courts adjudicating natural labeling cases have held that "natural" labeling is a "description of goods," and thus an actionable warranty.  *E.g., Gregorio*, 2018 WL 733673, at *5 ("naturally derived" an express warranty); *Gasser*, 2017 4773426, at *6 (collecting authorities); *Brown v. The Hain Celestial Grp., Inc.*, 913 F.Supp.2d 881, 900 (N.D. Cal. 2016) ("Pure, Natural & Organic" an express warranty); *Brenner v. Procter & Gamble Co.*, 2016 WL 8192946, at *8 (C.D. Cal. Oct. 20, 2016) ("Plaintiff has plausibly alleged that the 'Natural Clean' label is false and has otherwise adequately plead the elements of an express warranty claim.").  The natural labeling is part of the bargain because Plaintiff alleges that they would not have purchased the products on the same terms if they had known the truth about the unnatural ingredients.  *Complaint* ¶¶ 11, 16, 100; *see also Gregorio*, 2018 WL 733673, at *2; *Gasser*, 2017 WL 4773426, at *6.  Finally, the warranty was breached because the challenged products contain ingredients that are unnatural and synthetic and "do not have the characteristics, uses, or benefits, as promised."  *Complaint* ¶ 100.

Defendant also argues that Plaintiff's warranty claims fail because the Complaint does not "identify what specific claimed 'warranty' provision applies to any specific product.  Not true. The Complaint states in Count V that "Defendant…expressly warranted that the Products accomplished their purpose 'NATURALLY,' were 'natural,' and/or made with '100% plant-

derived cleaning ingredients.'"  *Complaint* ¶ 103.  And every single Product claims that it

accomplishes its purpose "NATURALLY."

### b.  Plaintiff Sufficiently States A Claim For Breach of the Implied Warranty of Merchantability

Defendant argues that Plaintiffs have failed to state a claim for breach of an implied

warranty because Plaintiffs have not alleged "facts establishing that the Products…are not fit for

their ordinary purpose…"  MTD at 20-21.  But Defendant incorrectly states the law.  The U.C.C.'s

provision for implied warranties of merchantability, as adopted by California, goes beyond fitness

for consumption.  Goods must: "(a) pass without objection in the trade under the contract

description; …(c) [be] fit for the ordinary purposes for which such goods are used; [and]…(f)

conform to the promise or affirmations of fact made on the container or label if any."  U.C.C. § 2-

314.

Defendant claims that Plaintiffs must first establish a violation of subsection (c) above in

order to state an implied warranty claim.  Defendant's view of an implied warranty is thus under-

inclusive.  The U.C.C. comments provide the following:

> Paragraph (f) applies . . . wherever there is a label or container on which
> representations are made, even though the original contract, either by express
> terms or usage of trade, may not have required either the labeling or the
> representation.  This follows from the general obligation of good faith which
> requires that a buyer should not be placed in the position of reselling or using
> goods delivered under false representations appearing on the package or
> container.

U.C.C. § 2-314, comments; *see also Boswell v. Costco Wholesale Corp.*, 2016 WL 3360701, at

*11 (C.D. Cal. June 6, 2016) ("Although [Costco] argues that [the Coconut Oil] is fit for ordinary

purpose of consumption, Plaintiffs are bringing their claim under a different definition of

merchantability, whether the product conforms with 'the promises or affirmations of fact made on

the container or label.' . . .  Accordingly, Defendant's Motion to dismiss Plaintiffs' implied

warranty claim is DENIED.") (citing Cal. Com. Code § 2314(2)(f)); *Zakaria v. Gerber Prods. Co.*,

2015 WL 3827654, at *11 (C.D. Cal. June 18, 2015) (finding that "Plaintiff's breach of implied warranty claim . . . based on alleged affirmative representations made by Defendant on the labeling of the formula . . . appropriate under Cal. Commercial Code § 2314(2)(f)"); *Perez v. Monster, Inc.*, 149 F. Supp. 3d 1176, 1185 (N.D. Cal. 2016) (plaintiff stated claim for breach of implied warranty based on "false promise or affirmation of fact on the container or label.").

Here, Plaintiffs allege that the Products contained misleading representations on their labels and therefore do "not conform to the promise or affirmations of fact made on the container or label." *Complaint* ¶ 109.  As to Defendant's second argument, that the implied warranty claim fails for the same reasons as Plaintiff's express warranty claim (MTD at 18), *see* Section III.C.3.a. *supra*.  Thus, Plaintiff states a claim for breach of implied warranty.

Finally, Defendant argues that Plaintiffs' breach of implied warranty claim fails for want of privity.  MTD at 22.  Although California requires privity for breach of implied warranty claims, it allows for several exceptions applicable in this case.  *See Clemens*, 534 F.3d 1017.  One exception that was recognized by this Court is when the defendant extends an express warranty. *See generally Atkinson v. Elk Corp. of Texas*, 142 Cal. App. 4th 212 (2006).  Additionally, Plaintiffs' claims qualify for another exception.  Under California law, "a third party beneficiary can enforce a contract made expressly for his benefit. . .. A contract made expressly for a third party's benefit does not need to specifically name the party as the beneficiary; the only requirement is that the party is more than incidentally benefitted by the contract."  *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008) (internal citations and quotation marks omitted) (concluding that plaintiffs were, as third-party beneficiaries, entitled to maintain a breach of implied warranty claim against the manufacturer where plaintiffs, not the distributors, were the intended consumers).  Courts have repeatedly applied this exception in circumstances similar to this case.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod.*

*Liab. Litig.*, 754 F. Supp. 2d 1145, 1184 (C.D. Cal. 2010) (finding that plaintiffs who purchased their cars from dealerships can maintain implied warranty claims against the car's manufacturer because the plaintiffs, and not the dealerships were the intended consumers);  *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 984 (N.D. Cal. 2014) (same); *see also Barakezyan v. BMW of N. Am., LLC*, 2016 WL 2840803, at *9 (C.D. Cal. Apr. 7, 2016) (concluding that the a plaintiff does not need to expressly allege that he was the intended consumer, so long as he "alleges facts tending to support that he is a third party beneficiary") (internal citations omitted).

### 4.  Plaintiffs Have Properly Pled Their Remaining Claims

Plaintiffs state claims for negligent misrepresentation, fraud, and unjust enrichment. Defendant's arguments for dismissal of the negligent misrepresentation and fraud claims again rehashes its arguments concerning Rule 9(b) and allegations that Plaintiffs have not alleged affirmative misrepresentations and reliance.  MTD at 22-23.  The Court should therefore deny dismissal of the negligent misrepresentation and fraud claims for the same reasons set forth above. *See* Sections III.B, *supra.*

Defendant argues that Plaintiffs' unjust enrichment claim fails because "the allegations do not support any such misrepresentation or unjust gain…"  MTD at 22.   This argument rehashes Defendant's arguments concerning the reasonable consumer standard.  Accordingly, the Court should deny Defendant's request to dismiss Plaintiff's unjust enrichment claim for the same reasons discussed at length and set forth in Section III.C.1., *supra.*

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss should be denied. Alternatively, if the Court determines the pleadings are deficient, Plaintiffs respectfully request leave to amend.

1

**ORLOWSKY LAW, LLC**

2

3    Dated:  July 8, 2019          By    _/s/ Daniel J. Orlowsky_

4                                        DANIEL J. ORLOWSKY

5                                        Daniel J. Orlowsky (*Pro Hac Vice*)
                                         7777 Bonhomme Ave., Suite 1910
6                                        St. Louis, MO  63105
                                         Phone:  314-725-5151
7                                        Fax:  314-455-7375
                                         *dan@orlowskylaw.com*
8

9                                        Adam M. Goffstein (*Pro Hac Vice*)
                                         **GOFFSTEIN LAW, LLC**
10                                       7777 Bonhomme, Suite 1910
                                         St. Louis, Missouri 63105
11                                       Phone: (314) 725-5151
                                         Fax:     (314) 455-7278
12                                       *adam@goffsteinlaw.com*

13                                       *Co-Interim Class Counsel*

14                                       James A. Morris, Esq. (CSBN 296852)
                                         Shane A. Greenberg, Esq. (CSMN 210932)
15                                       **MORRIS LAW FIRM**
                                         4111 W. Alameda Avenue, Suite 611
16                                       Burbank, CA 91505
                                         Tel:  (747) 283-1144
17                                       Fax:  (747) 283-1143
                                         *jmorris@jamlawyers.com*
18                                       *jreenberg@jamlawyers.com*

19                                       *Attorneys for Plaintiff*

20

21

22

23

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court for the United States District Court, Central District of California, by using the Court's CM/ECF system on July 8, 2019.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the Court's CM/ECF system.


Dated:  July 8, 2019                     By      /s/ *Daniel J. Orlowsky*
                                                    DANIEL J. ORLOWSKY

                                            Daniel J. Orlowsky (*Pro Hac Vice*)
                                            **ORLOWSKY LAW, LLC**
                                            7777 Bonhomme Ave., Suite 1910
                                            St. Louis, MO  63105
                                            Phone:  314-725-5151
                                            Fax:  314-455-7375
                                            *dan@orlowskylaw.com*

                                            *Attorney for Plaintiff and the Proposed Class*